# AMERICAN NAT. INS. CO. v. McPHETRIDGE.—187 S. W. (2d) 640.

Eastern Section.   January 5, 1945.

Rehearing denied, March 5, 1945.

Petition for Certiorari denied by Supreme Court, May 15, 1945.

146

W. W. Piper and Cates, Smith & Long, all of Knoxville, for appellant.

Southern & Southern, of Knoxville, for appellee.

BURNETT, J. This suit is one for reformation of a policy of life insurance, on the ground that by a clerk's mistake it was made out for $430 when the amount applied for and agreed upon was $230. The suit was begun within sixty days after the death of the insured and $230 was tendered into court when the suit was filed. At a later date this tender was paid to the appellee without prejudice.

The beneficiary (appellee herein) answered this suit and denied the insurance company's right to reform because there was no mutual mistake or fraud; acquiescence; negligence; laches; and the incontestable clause. A cross-bill was also filed asking for a judgment for the face of the policy plus the statutory penalty. The Chancellor denied the relief sought in the original bill because the insurance company was guilty of "gross laches". He rendered judgment against the company for the face of the policy plus interest and the statutory penalty on the whole amount less the tender.

The policy was issued upon an application dated May 26, 1933 (by mark) by the insured, Carrick McPhetridge, and his wife, Lula McPhetridge, the appellee, was named as beneficiary. Neither the insured or the beneficiary could read or write. It is apparent that the amount of insurance as written in the application has been erased. The explanation of this is that originally the insured agreed to pay 20 cents per week and that this amount would purchase a $184 policy. This amount was written in the application. Then before the agent left the insured he thought that he could pay 25 cents per week which would make a policy of $230. The $184 amount was erased and the $230 amount written over the erasure. The figure one in the $184 was not completely erased and when the $230 amount was written over this the figure one crossed the figure two so that it looked very much like a four. A close examination of the application confirms this theory.

A policy was issued on June 5, 1933, from this application. The amount of insurance shown in the policy is $430. This was clearly due to either an error in reading the application or in transcribing the amount on the policy. This error was made at the home office of the company by one of its clerks. All records at the home office and the local office showed the amount of this insurance to be $230. This was the recognized amount of insurance that 25 cents a week would purchase for a man of the insured's age.

Within about ninety days after this policy was issued the soliciting agent of the appellant saw the policy and the error that had been made therein. As far as this record discloses this fact was not made known to the local or home office. It is not shown that this fact was brought to the insured's notice.

The insured died May 15, 1942. On May 21, 1942, the proof of death, policy, etc., were filed with the local office of the appellant. The local superintendent then found the error in the policy and informed the beneficiary thereof. It was then that she employed her present counsel. Mr. Southern went to the local office of appellant and was shown the policy but he was refused permission to take it out of the office. Mr. Southern within the hour had a replevy writ issued for the policy. When the officer served this writ within the hour, the policy had been sent to the home office. Judgment was secured in the Sessions Court of this county for the policy and the matter appealed to the Circuit Court by the appellant herein. Before final action was had in the Circuit Court the present action was filed.

"Reformation of an insurance policy may be had, in general, when, by reason of fraud, inequitable conduct, or mutual mistake, the policy as written does not express the actual and real agreement of the parties. More particularly, if by inadvertence, accident, or mistake the terms of a contract of insurance are not fully or correctly set forth in the policy, it may be reformed in equity so as to express the actual contract intended by the parties, if the mistake is mutual or if there has been fraud or inequitable conduct by one of the parties to the contract." 29 Am. Jur., page 237, section 241. See also Merrian v. Nat. L. & A. Ins. Co., 169 Tenn. 291, 297, 86 S. W. (2d) 566.

Many cases are collected and summarized in an annotation in 125 A. L. R. 1060, 1071, wherein reformation has been granted correcting the amount involved, even though an incorrect amount has been inserted in the policy due to an error of the insurer. A careful examination of these cases and others we have examined show that they are

clearly distinguishable upon their facts from the instant case. To illustrate we will briefly refer to a few of these cases.

Probably the leading case on the subject is Columbian National Life Insurance Company v. Black, 10 Cir., 35 F. (2d) 571, 71 A. L. R. 128. Application was made for a $10,000 policy. The printer, by mistake, used a form for ordinary life on the front page while on the reverse side thereof he used a form for an endowment policy. Each of these had accompanying tables setting out values to be given the insured at the end of each year. In one instance he would receive $3,040 at the end of twenty years, in the other he was given $10,000 at the end of the same period. Immediately upon discovery of this error the insurer informed the insured and consistently for years sought to correct the error but the insured refused to return the policy for correction. The court very properly held that this error was patent and a manifest absurdity and that the insured was determined to enrich himself thereby, if possible.

In New England Mut. Life Ins. Co. v. Jones, D. C., 1 F. Supp. 984, the company issued a "double indemnity" policy for $1,500 on the face of the policy with a provision concerning accidental death of "Double Indemnity in case of death from accident." The printed form provided that in case of accidental death the company would "pay ———— dollars in addition to the face amount of this policy." A clerk of the company filled in this blank with the word "Five Thousand." The insured died by accident four years after the policy was written. The court very properly held that from the language of the policy the insured knew a mistake had been made—a patent and manifest absurdity—in that $5,000 was not

double $1,500. Reformation was granted and the defense of laches was not well taken because the insurer did not discover the error until after the death of the insured. Many cases are cited in the opinion that support the conclusion of the court.

In Mutual Life Ins. Co. of Baltimore v. Metzger, 167 Md. 27, 172 A. 610, reformation was granted the insurer in a policy written for $500 when a policy of only $50 was applied for and paid on. This error was not discovered until after the death of the insured and the beneficiary having expended money on the basis of the face of the policy was awarded $200. Two of the eight members of the court dissented in part. Their dissent is not embodied in the report. The death here occurred in a year after policy was issued. The reformation was granted apparently because the mistake was a natural one and involved a "slight degree of negligence."

█ In addition to the cases cited in the briefs we have examined all the cases we could find on the subject. From our examination of these cases it is obvious to us that each case must be decided on the basis of the particular facts in each case.

In Kaufman v. New York Life Ins. Co., 315 Pa. 34, 172 A. 306, 308, the court denied reformation because: "No ambiguity is apparent upon the fact of the policy, and the discrepancy between the total amount of the premiums and the surrender value is not so great as to charge appellant with notice of an error."

In New York Life Ins. Co. v. Street, Tex. Civ. App., 265 S. W. 397, reformation was denied because the insurer had accepted premiums for 14 years on a 15 year payment policy; "such cash value having been a material

152

factor, inducing insured to keep policy in force during its latter years.''

■■ Under the facts of the case before us we think reformation was properly denied the insurer. The insured was an illiterate white man 48 years old at the time the policy was issued and at the time the insurer discovered their mistake. The insured had no knowledge of the mistake. He died without ever being thus informed. Reformation was not attempted until nearly nine years after the insurer had knowledge of its mistake. There was nothing on the face of the policy or otherwise to bring this mistake to the attention of even ''a man of letters.'' The insurer allowed the insured to pay his full premiums during his lifetime in reliance upon the written figures on the face of the policy as being correct. All this time the insurer had in its files information showing precisely what the contract should have been. We are justified in assuming that this was a sufficient reason for his having kept the policy in force. The knowledge of the mistake now sought to be corrected was discovered by the insurer's agents within 90 days after the mistake was made. The person who discovered this mistake were the agents of the appellants. See Code, section 6087. Through these agents the insurer is presumed to have knowledge of this mistake. Their knowledge is the insurer's knowledge.

■ The incontestable clause in the policy does not preclude the right of reformation. The reasons for the statement are ably set forth in a quotation from Columbian Nat. L. Ins. Co. v. Black, supra [35 F. (2d) 577], ''This is not a contest of the policy, but a prayer to make a written instrument speak the real agreement of the parties. It would hardly be suggested that an assured, who brings an action to reform a policy and to recover

under it as reformed, was contesting the policy within the meaning of this clause. Yet the clause is not one-sided, and the right of the assured to have the writing express the agreement actually made is no greater than the right of the assurer.''

■ The doctrine of laches was very aptly stated by Mr. Justice Lansden in Evans v. Steele, 125 Tenn. 483, 494, 495, 145 S. W. 162, 165, as follows: ''Relief is generally refused by courts of equity, because of lapse of time, only in such cases where the loss of evidence, death of witnesses or parties, and failure of memory resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and make it impossible for the court to pronounce a decree with confidence. . . . The doctrine of laches in courts of equity is not an arbitrary or a technical doctrine. No hard and fast rule for its application can be formulated. But, when the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.''

■ For reasons hereinbefore expressed we are satisfied that the Chancellor properly applied the doctrine here. The doctrine is not a fixed rule of law but its application must depend on the facts and circumstances of each case. It was said in O'Brien v. Wheelock, 184 U. S. 450, 493, 22 S. Ct. 354, 371, 46 L. Ed. 636, that: ''It is not a mere matter of lapse of time, but of change of situation during neglectful repose, rendering it inequitable to afford relief.''

■ The assignment that the Chancellor erred in holding the appellant liable for the statutory penalty will be sustained. We find no evidence that the insurer refused payment by reason of bad faith. Within 60 days from

the death of the insured the appellant tendered into court what is contended the policy was written for, i. e., $230. There was no evil or bad intent on its part in refusal to pay the $430. The appellant filed its bill for reformation in perfectly good faith. The questions presented are of first impression in this state and our conclusion thereon has caused us considerable work and investigation. They are not free from doubt. Many cases on the subject will be found in the annotation to section 6434 of the Code.

■ We think the appellant was properly taxed with the costs of the replevin suit. This suit could have been avoided by slight co-operation of the appellant with the attorney for the appellee.

As modified the decree of the Chancellor is affirmed. The costs of this court are taxed to the appellant.

McAMIS and HALE, JJ., concur.

## On Petition to Rehear.

BURNETT, J. The appellee has filed herein a dignified, courteous and forceful petition to rehear. This petition is directed to two propositions, to-wit:

1. "That the burden was on the complainant and cross defendant (insurance company) to show their actions were in good faith."

2. "The presumptions are strongly in favor of the findings of fact by the Chancellor."

■ As to proposition No. 1 we did not burden our former opinion with an academic discussion of the subject because the question has been decided so many times in this state we deemed it sufficient to merely direct counsel's attention to the various cases annotated in the note to the Code section relied on. Under a heading in bold type, Burden of Proof, the annotator says: "The

burden of proof is on the complainant to show that the insurer's' refusal to pay was not in good faith. Life, etc., Ins. Co. v. Robertson, 6 Tenn. App. 43, referring to dictum in St. Paul Fire, etc., Ins. Co. v. Kirkpatrick, 129 Tenn. 55, 164 S. W. 1186. See Atlas Ins. Co. v. Allen, 2 Tenn. Civ. App. 479; Pittman v. Missouri State Life Ins. Co., 12 Tenn. App. 228.''

The cases here cited and others amply support the statement. Then too the very wording of the Code, section (6434) point to no other conclusion when it is said: ''that it shall be made to appear . . : that the refusal to pay said loss was not in good faith,'' etc.

As far as we know there has never been any doubt as to the correctness of the second proposition. The fact is it is generally stated in much stronger language than that as used in the petition. The statement of the Chancellor in rendering a judgment for the penalty was not a finding of fact on this question—it was a mere conclusion of law. We stated in our original opinion: ''We find no evidence that the insurer refused payment by reason of bad faith.''

We have again reviewed this record and are forced to our original conclusion as above stated. There being no evidence of fact on the question we are not denying the presumption due the finding of fact of the Chancellor.

The result is that the petition must be denied.