LOWELL T. SMITH and TRAVIS U. BROWNING d/b/a Smith-Browning Motors, Complainants-Appellees, v. CONTINENTAL INSURANCE COMPANY and LUCILLE SMALLING, Defendants-Appellants.
—469 S.W.2d 138.

Middle Section. February 26, 1971.

Certiorari Denied by Supreme Court July 6, 1971.

Harold Howser, Gallatin, for complainants-appellees.

H. T. Finley and Harry G. Nichol, Jr., of Parker, Nichol & Roberts, Nashville, for defendant-appellant, Continental Ins. Co.

James W. Chamberlain Lafayette, for defendant-appellant Lucille Smalling.

PURYEAR, J. The complainants Lowell T. Smith and Travis U. Browning, partners, d/b/a Smith-Browning Motors, filed their original bill against the defendants on November 12, 1969, alleging that they are engaged in the operation of an automobile agency, which had been operated by them since January 1, 1968, on which latter mentioned date the defendant, Continental Insurance Company, issued an endorsement insuring complainants against certain hazards pursuant to an original policy previously issued by said Continental Insurance Company to complainants' predecessors in business.

The bill further alleges that the defendant, Lucille Smalling, was the agent and representative of Continental and had been designated to service the policy endorsed to complainants and that they dealt with her as agent of said insurance company.

In said original bill, complainants further allege that on June 23, 1969, while said insurance policy was in force a flood occurred in Red Boiling Springs, Tennessee, which greatly damaged their business property, including ten new automobiles and nine used automobiles, as a result of which complainants suffered loss and damages in the amount of $43,296.12; that the defendant, Continental, had offered to pay $2,909.00 in full settlement of this loss, which offer was refused by complainants.

In said bill complainants further aver that the defendants had not acted in good faith in refusing to pay the full amount which the policy of insurance provided for such loss and the bill contains the usual prayer for proc-

ess, also for decree or judgment against the defendants for the amount of complainants' loss, for interest and penalty and for general relief.

Complainants further allege in said bill that they followed instructions given to them by said Lucille Smalling, agent of Continental, in filing periodic inventories for the purpose of adjusting premium payments and allege that if, under the terms of the policy, they have not correctly reported inventories for the purpose of premium adjustments and if any premiums are due by reason thereof, they offer to pay same.

The defendant, Lucille Smalling, filed her answer to the original bill admitting the flood damage to complainants' property, admitting the issuance of the policy, but averring that she did not know the method used by complainants in reporting their inventories for the purpose of premium adjustment, since said method of reporting is not set forth in the bill. She denied that she was indebted to complainants or that she had acted in bad faith.

Continental filed its answer on February 12, 1970, denying, in substance, that an agency agreement existed between them and their co-defendant, Lucille Smalling, at the time the endorsement mentioned in complainants' original bill was issued, admitting only that such agency existed for the limited purpose of allowing the defendant, Smalling, to collect and remit premiums on various policies.

In said answer, Continental admitted that it issued a policy insuring complainants' predecessors in business, which policy was transferred by an endorsement for the purpose of insuring complainants for the remaining

term of said policy, but further avers that such policy contained a provision obligating the complainants to make monthly reports showing the location of all automobiles owned by them and the actual cash value thereof at the close of business on a given day of the preceding month, and further averring that the complainants breached this provision of the policy by failing to report the location of all automobiles and the cash value thereof at the close of business on the given day of each preceding month.

Continental further avers in its answer, that for the month of May, 1969, complainants reported new automobiles of the value of $3,409.32 and therefore, if complainants are entitled to recover anything they are limited to that amount, less salvage value.

On motion of complainants, the Chancellor later allowed them to file an amended and supplemental bill upon the date of trial, which bill alleges that since the deposition of Lucille Smalling was taken by Continental they discovered that the insurance policy issued to complainants required a monthly report showing all automobiles and the cash value of same on the last day of the preceding month.

They further aver in said amended and supplemental bill that they made their monthly reports to Continental exactly in accordance with instructions given them by Continental's agent, Lucille Smalling, and that said monthly reports would have contained the actual cash value of all automobiles at their location as of the last business day of the preceding month, but for the erroneous reporting procedure outlined to them by said agent. They also offered in said amended and supplemental bill

to pay any additional premium that they may owe and prayed that the monthly reports for January, February, March, April and May, 1969, be amended to show the true and correct cash values of automobiles at their business location on those respective dates.

To this amended and supplemental bill Continental filed its answer reserving all rights or exceptions thereto, denying that the deposition of Lucille Smalling developed any facts which were unknown to complainants at the time the original bill was filed and further denying that Lucille Smalling gave the complainants directions as to information to be included in the monthly reports and reiterating the former allegation that she was only a limited agent and that any representations made by her in this respect were beyond and outside the scope of her agency.

The defendant, Lucille Smalling, filed no written answer to the amended and supplemental bill, but by agreement of counsel and permission of the Chancellor, her counsel made an oral denial of the allegations in said amended and supplemental bill and demanded proof thereof.

The case was tried upon oral and documentary evidence before the Chancellor on March 24, 1970, at conclusion of which trial the Chancellor took the case under advisement and filed a memorandum opinion on June 1, 1970.

In accordance with the conclusions set forth in said memorandum opinion a decree was entered on June 15, 1970, by which it was ordered and decreed that the complainants have and recover of the defendants, Continen-

tal Insurance Company and Lucille Smalling, the sum of $17,810.24, but no penalty was decreed.

Both of the defendants prayed and perfected an appeal from such parts of the decree as were adverse to them and each of them, and complainants prayed and perfected an appeal from the action of the Court in disallowing the statutory penalty.

In 1967 and for several years prior thereto, Miss Lucille Smalling and Mrs. Catherine Spivey, as partners, operated an insurance agency in Red Boiling Springs, Macon County, Tennessee, under the firm name of "Macon and Clay County Insurance Agency."

Also in 1967 C. R. Joines and wife, Mildred Joines, operated an automobile dealership under the firm name of Joines Motor Company in Red Boiling Springs on premises directly across the street from the Macon and Clay County Insurance Agency.

Among the insurance companies represented by this agency was the defendant, Continental, and on February 4, 1967, Continental issued to Joines Motor Company a comprehensive business policy insuring against several types of risks, including damage to automobiles as a result of flood.

This policy was issued through the Macon and Clay County Insurance Agency and countersigned by Miss Smalling as agent. The policy term was three years and the initial premium of $2,326.30 for the three year term was paid in advance, at which time the following endorsement was included in the policy:

"ENDORSEMENT #1

IT IS UNDERSTOOD AND AGREED THAT THE PREMIUM PAYMENT OF THIS POLICY IS HEREBY AMENDED TO A PRE-PAID BASIS

TOTAL 3 YEARS PREPAID PREMIUM DUE: $2,326.00

ATTACHED TO AND FORMING PART OF POLICY NO. CBP 41919 OF THE CONTINENTAL INSURANCE COMPANY

ISSUED TO D/B/A JOINES MOTORS

EFFECTIVE FEBRUARY 4, 1967."
(Ex. 1 to Cross-Examination, Lucille Smalling)

This policy is quite a voluminous document, containing some seventy-five or eighty printed pages of agreements, conditions and exclusions, including sixteen endorsements, but many sections of the text thereof and, in fact, many entire pages of such text, have no application to the loss involved in this case.

Although it might be said that an attorney at law or an expert in the field of insurance could, with painstaking scrutiny, interpret the various provisions thereof, such a task would create utter bewilderment and confusion in the mind of the average layman and such confusion has obviously produced this litigation as will appear from a summary of the evidence.

One of the many provisions of said policy is as follows:

"Premium Basis

A. Monthly reporting. Values determined as—

Check
Method
Agreed
Upon

[ ] (1) the average of the values for each day of preceding month coming within the policy term

[ ] (2) the average of the values for the last business day of each week during preceding month coming within the policy term

[ x ] (3) the values for the last business day of the preceding month.

[ ] B. Non-reporting. Stated limit of liability.

Monthly Statements

If the premium basis for this insurance is indicated above as 'Monthly Reporting', on or before the fifteenth day of each month the insured shall render to the company, on the form provided by the company, a statement of the location of all automobiles and the actual cash value thereof at the close of business on a given day or days of the preceding month, determined as indicated in the schedule.'' (ADS-2)

---

Immediately following the foregoing provision, the total limit of liability for damage to automobiles is shown to be $30,000.00, of which $10,000.00 is allocated to automobiles in the building and $20,000.00 is allocated to automobiles on the lot.

Also contained therein is the following provision:

"A. if the premium basis for this insurance is indicated in the schedule as 'Monthly Reporting', the company's liability for any loss shall not exceed that proportion thereof which (1) the aggregate actual cash values with respect to the location where the loss occurred or where the damaged property is normally located, as stated in the monthly statement last rendered to the company prior to the loss, bears to (2) the aggregate actual cash values at said location as of the date of said statement including, with respect to the main sales location, the actual cash value of all automobiles made available for the use of the insured, officers or employees and privately stored at other than the named locations, however if the first monthly statement required under the terms of this supplement is delinquent as of the date of any loss, the company's liability for such loss shall not exceed 75% of the limit of liability stated in the schedule for the applicable location." ADS-5

Continental admits liability to complainants for $2,909.00, but insists that under the foregoing policy provision it is not liable for any more than this amount.

At the time the policy was originally issued, Miss Smalling had a general agency agreement with Continental, but this agency agreement was cancelled as of December 1, 1967, at which time a limited agency agreement became effective which contains the following language:

"WHEREAS, said Agent has requested the Company to license or to continue to license of the Agent with limited authority to issue and countersign endorse-

ments to be attached to insurance contracts of the Company which are presently in force and which were issued through said Agent while the aforesaid Agency Agreement was in force,

NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

1. As to insurance contracts of the Company which are presently in force and which were issued through said Agent, the Agent has full authority (1) to issue and countersign endorsements changing and adding insureds and loss payees, changing addresses, reducing the terms and amounts of insurance and any other endorsements which have had the prior written approval of the Company, and (2) to collect, receive and receipt for additional premiums on any such contract or endorsement, including but not being limited to installment premiums, premiums on annual renewal endorsements on term contracts, audit premiums and premiums on continuous contracts." (Ex. 1 to Cross-Examination of Lucille Smalling)

This limited agency agreement was in effect up until the loss occurred, but neither the complainants nor Mr. and Mrs. Joines knew about this change of agency until the suit was filed.

It is admitted by all of the parties that on June 23, 1969, several new and used automobiles owned by complainants were severely damaged by flood water while such automobiles were located upon the insured premises and while the policy of insurance was in force.

The complainant, Travis U. Browning, testified that he and his co-complainant, Lowell T. Smith, were

officially approved as dealers by the Chrysler Motor Company on January 4, 1969, and they assumed control of the business which was purchased from Joines Motor Company on January 6, 1969; that he had no previous experience in the automobile business; that they purchased the partnership, inventory, shop equipment, office equipment and franchise and assumed the finance plan on the new cars which were in stock, which new cars at that time were valued at $51,091.52.

He further testified that he knew Joines Motor Company had insurance with the Macon and Clay Insurance Agency and was acquainted with Miss Lucille Smalling, one of the owners of said agency; that she made arrangements for the policy originally issued to the Joines Motor Company in 1967 to be transferred to Mr. Smith and himself; that at this time he thought there was a balance of $103.00 due on the policy premium and he tendered that amount, which was refused for the reason that the initial premium had been paid in full; that all of his transactions with reference to the insurance were with Miss Smalling; that Mrs. Mildred Joines assisted him in the paper work and reports concerning the insurance for approximately four weeks after he and Mr. Smith took over the business since she had been previously employed by Joines Motor Company; that she assisted him in making the reports to Continental and that he also conferred with Miss Smalling, upon whom he depended to advise him as to any and all insurance questions.

He testified that Mrs. Joines assisted him in preparing his January, 1969, report to Continental and Miss Smalling assisted him with the February report, at which latter time she told him to only report the new

automobiles that he had purchased since the January report; that on June 23, 1969, his new automobile inventory was $33,341.12 and his used automobile inventory was approximately $4,000.00.

He testified that the salvage value of the new automobiles after the flood was $16,550,000, but that he was also entitled to a credit for some amount which he had expended in cleaning up these automobiles in order to sell them; he also testified that he believed the flood loss on his used automobiles was $3,000.00.

Mr. H. D. Howser, a public accountant, testified as to the value of automobiles owned by complainants at the time of flood damage, but since the defendants do not insist that the amount of $14,810.14 awarded by the trial Court for damage to new automobiles exceeds the actual loss sustained to such automobiles, it is not necessary for us to summarize the testimony of this witness. He did not undertake to testify concerning the amount of damage to used automobiles.

The defendant, Lucille Smalling, testified that she sold the insurance policy to Mr. and Mrs. Joines and at some time thereafter she gave Mrs. Joines certain instructions about filing monthly reports, her testimony on this point being as follows:

"Q. Now before Mr. and Mrs. Joines sold this agency to the owners now, did you talk to Mrs. Joines about filling out these monthly reporting forms?

A. Well, somewhere during the first year of the policy period Mrs. Joines came over. See, I always send in the original report for them, keep my copy and they keep one, and she asked me concerning this report,

because there was a tremendous charge was being made on the audit. And I said, 'No, you report what you bring on the lot after you make your report, because you're already charged with that.'

Q. Where did you get that information?

A. Well, I had been connected with insurance business for quite a while, and through the instructions of a manual when you take your examination and through your rules and regulations. And I didn't recall anywhere in that information that you made a direct audit report—I mean a report of value.

Q. Then after you told her that, did the report include only the cars purchased since the last report?

A. I suppose now, as far as I know." (B. of E. pp. 140, 141)

She testified that when complainants purchased the business from Mr. and Mrs. Joines, the parties discussed the insurance and it was decided to contact Continental Insurance Company in order to determine if they would endorse the policy over to complainants; that a letter was written to the Nashville office of Continental and they agreed to furnish coverage by the endorsement without any new information being obtained.

She testified that when the change of ownership took place, Mrs. Joines, who was assisting the complainants in setting up their business and bookkeeping system, came to her office and inquired about the insurance; that she told Mrs. Joines to only include on her monthly insurance report the new cars brought upon the sales lot during that particular month because they already had a report on the cars previously purchased; that she

directed Mrs. Joines to handle the reports in this manner based on her experience as an insurance agent, as well as her examination of the insurance manual as to rules and regulations and did not know that an audit report based on actual value of all automobiles on hand was required; that as far as she knew, only the new automobiles purchased each month were to be included in the monthly reports and that she gave this same information to Mr. Browning as to subsequent monthly reports.

She testified that she serviced all policies on her books for Continental, but did not sell any more policies for them after her general agency was cancelled in 1968; that she did not know how the premiums were figured, based on monthly reports, since this was done in the Louisville office of Continental and that she did not know that the directions which she gave Mrs. Joines and Mr. Browning to be followed in filling out the reports were incorrect.

She also testified that she had not been furnished a rate book by Continental and that she was not instructed as to how to file a monthly report until after the flood loss occurred.

Mrs. Mildred Joines testified that she never fully understood the monthly reporting system and when she was taking care of insurance matters for Joines Motor Company, she first reported everything on the lot, but that the premiums were running so high she discussed this matter with Miss Smalling and was told by her that she was preparing her monthly reports in an incorrect manner and was only required to include automobiles that came in during the month; that after the conversation with Miss Smalling, she changed her reporting

method so as to report at the end of each month only the new automobiles that came in during that month for which the report was made.

Continental has filed seven assignments of error and the aggregate effect of assignments numbered one, two, three, four and five is to insist that it was error for the trial Court to consider evidence that the agent, Miss Smalling, gave erroneous instructions to complainants as to the method of making monthly reports and to hold that such act of the agent was within the apparent scope of her authority.

Under the sixth assignment, it is insisted that the trial Court should have limited complainants' recovery to the loss sustained to only such of the automobiles of complainant that were listed on the monthly report for the month of May, 1969.

Under the seventh assignment, it is insisted that the trial Court should not have awarded any amount for damage to used automobiles because such estimate of loss or damage is not sustained by any competent evidence.

Under the first assignment, it is insisted that the evidence preponderates against the trial Court's decree rendered against Continental.

Miss Smalling has filed ten assignments of error, the aggregate effect of which is to raise the following three propositions:

1. That none of the pleadings contain an allegation to the effect that Miss Smalling was guilty of perpetrat-

ing any act of fraud or bad faith which resulted in a loss to complainants.

2. There is no evidence in the record to prove that Miss Smalling committed any act of fraud or bad faith which resulted in a loss to complainants.

3. That the evidence preponderates against such portion of the trial Court's decree awarding the complainants a recovery against her and preponderates in favor of her insistence that all acts committed by her in furtherance of the transactions between the parties were committed by her as agent for Continental, while acting within the apparent scope of her authority as such agent, and therefore, any decree rendered in favor of complainants by reason of her acts cannot be rendered against her but should be rendered against Continental.

We will not consider these assignments separately, but in the course of our discussion of the questions of law and fact presented here we will consider all of them.

In our opinion, the evidence does not show bad faith on the part of any of the parties. Miss Smalling insists that she honestly thought the insured was only required to report at the end of each month the new automobiles which had been acquired during such monthly period and there is no evidence in the record which causes us to doubt her sincerity.

She told Mrs. Joines that this method was proper because the automobiles previously acquired had already been taken into consideration.

We do not disagree with Continental's insistence that the purpose of monthly reporting is to give the insured complete coverage up to the limit of liability if he desires

it and that whether or not the insured gets complete coverage depends upon the insured's monthly reports of actual values and that while by his reports the insured cannot extend the insurer's liability beyond the agreed limit of liability, he can reduce both his premium and his coverage to a lesser amount of value than he actually has.

However, this is something which was not known to either the agent or the insured in this case, until after the loss had occurred.

From evidence in the record, it does not appear that either the complainants or Miss Smalling intended to reduce coverage to the value of the new automobiles purchased during any single month, but on the contrary, it appears that both intended to maintain adequate coverage at all times.

There is no reason to doubt that if either of them had known the proper reporting method and the purpose thereof, such method would have been followed and the additional premium paid, especially since a rather large initial premium ($2,326.30) had already been prepaid. Mr. Browning's utmost good faith in the matter is demonstrated by his tender of payment of $103.00 at the time the policy was endorsed to Mr. Smith and himself, which payment was refused for the reason that the initial premium had been prepaid for the full term of three years.

Complainants are relying upon the provisions of T.C.A. Section 56-705, which is as follows:

"56-705. *Solicitors are agents of the insurer.—Licensed fire insurance brokers excepted.—*Any person who shall

solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers."

In Maryland Cas. Co. v. McTyier (1924), 150 Tenn. 691, 266 S.W. 767, the Supreme Court had occasion to consider the meaning of Chapter 442, Acts of 1907, by which the foregoing Code Section was originally enacted into law, and in defining the word "solicit", as used therein, the Court held that the word includes, broadly, any person who holds himself out as an insurance agent and thus invites the business by collection of premiums and delivering policies and receipts.

In his memorandum opinion, the Chancellor dealt with this subject in the following language:

"The Court fails to find any distinction between the soliciting of a policy, and the soliciting of an endorsement to a policy. In view of the above facts and circumstances, the Court feels without question that the complainants had every right to feel and that as a matter of law, Lucille Smalling was the agent for the Continental Insurance Company from the date of the endorsement issued to the Complainants and that said agency continued up to and through the date of the flood." (Tr. pp. 35, 36)

Also in Maryland Cas. Co. v. McTyier, supra, the Supreme Court referred to the fact that the State of Wisconsin has a similar statute and quoted with approval

from Schomer v. Hekla Fire Ins. Co., 50 Wis. 575, 7 N.W. 544, as follows:

" 'Now it is difficult to imagine what object this provision was intended to accomplish, or what purpose *sub-serve,* if it has not the effect, under the circumstances, to make Lawson the agent of the defendant in the transaction. His acts, certainly, bring him within both the letter and spirit of the law. He was the only real actor for the defendant in making the contract; *pro hac vice* he assumed to represent, and did represent, the company in the matter; he received the application, settled with the insured the rate and terms of insurance, delivered to them the policy, collected the premiums, and shared in the commission. In fact, he did everything that was done on behalf of the company, except the mere act of countersigning the policy. He was the only person the plaintiffs dealt with; they knew no other agent in effecting the insurance; they were totally ignorant of his relation to the defendant, or of his want of authority to represent and act for it. It is idle to contend that he did not in any manner aid or assist in making the contract for the company, when he was, in fact, the only person who did treat with the plaintiffs on its behalf. * * *

'But it is said that it was unreasonable to make the defendant responsible for the acts of Lawson, who was never authorized to act for it or bind it in any way. The answer to this objection is, the Legislature has assumed the right to regulate the business of insurance, and prescribe the manner in which it shall be conducted in this state. It has declared that whoever solicits insurance on behalf of an insurance company,

or makes any contract of insurance, or in any manner aids or assists in making such contract, or transacts any business for the company, shall be held an agent of such company to all intents and purposes. The obvious intention of the Legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority. * * * It seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom it permits to solicit insurance on its behalf, or who receives applications for insurance, makes, or aids in making, contracts of insurance, or transacts the business whether such person has in fact authority to act for it or not.' '' Supra, 150 Tenn. pp. 699, 700, 266 S.W. p. 769.

In Henry v. Southern Fire & Cas. Co. (1958), 46 Tenn. App. 335, 330 S.W.2d 18, this Court took judicial knowledge of the fact that it is customary for insureds to accept policies and keep them without reading them.

In Shelby Mutual Ins. Co. v. Wilson (1964), 53 Tenn. App. 428, 383 S.W.2d 791, and in Commercial Standard Ins. Co. v. Paul (1951), 35 Tenn.App. 394, 245 S.W.2d 775, this Court said:

'' 'In matters pertaining to insurance the insured deals exclusively with the insurer's agent. The insurer cannot deal with its patrons in any other way. Justice and law therefore require that the insurer shall be held to sanction what the agent agrees to and upon which

the insured relies, and knowledge of matters affecting the risk or conditions of the policy acquired by the agent in soliciting the insurance is the knowledge of the insurer.'" Supra, 53 Tenn.App. p. 451, 383 S.W.2d p. 801.

Directly bearing upon one of the determinative questions involved in the case at bar, is Vulcan Life & Accident Ins. Co. v. Segars (1965), 216 Tenn. 154, 391 S.W.2d 393, wherein the Supreme Court said that the negligence or mistake of an agent within the scope of his authority is the responsibility of his principal, the insurance company, and citing Henry v. Southern Fire and Cas. Co., supra.

Counsel for Continental insist, in their brief, that Miss Smalling had no right, express or implied, to waive compliance and application of the plain provisions of the contract of insurance, adding, that "her admitted incompetence respecting this type of policy of insurance, or her desire to favor a policyholder by keeping the premium low are matters for which she should answer, and for which she alone is liable," citing the Tennessee cases of Artress v. State Farm Fire & Casualty Co., 221 Tenn. 636, 429 S.W.2d 430; Osborne v. Atlas Assurance Co., (1969) 61 Tenn.App. 618, 457 S.W.2d 364, and Duluth Nat. Bank v. Knoxville Fire Ins. Co. (1886), 85 Tenn. 76, 1 S.W. 689.

Artress v. State Farm Fire & Casualty Co., supra, is not applicable because no waiver of a policy provision was involved in that case.

Osborne v. Atlas Assurance Co., supra, is a case wherein this Court held that refund of an unearned premium within a reasonable time is not a condition

precedent to cancellation of an automobile liability insurance policy pursuant to the plain provisions thereof and the holding in that case is not controlling in the case at bar.

Duluth Nat. Bank v. Knoxville Fire Ins., Co., supra, involves the unauthorized substitution of one insured for another in a fire insurance policy, which substitution was made by an insurance broker.

It is significant that the latter mentioned case was decided in 1886, many years before passage of Chapter 442, Acts of 1907, which is now codified is 56-705 Tennessee Code Annotated.

It is also significant that this section makes a distinction between an agent who solicits a policy, to whom the section is applicable, and a licensed fire insurance broker, to whom such section is not applicable.

Therefore, Duluth Nat. Bank v. Knoxville Fire Ins. Co., supra, has no application to the case at bar.

The cases from other jurisdictions cited by Continental are not compatible with our Tennessee decisions on the question under consideration here and therefore, we do not feel inclined to follow these cases.

■ With the reference to the amount of $3,000.00 awarded by the Chancellor for damage to used automobiles, the following statement was made in the Chancellor's memorandum opinion:

"The Court further feels that due to the nature of the used car business that Mr. Browning would be in a better position to determine the loss to these vehicles than the accountant. Mr. Browning stated very frankly

that he would not know the exact loss sustained to the used cars, but to the best of his ability, he felt that this was $3,000.00." (Tr. p. 39)

With the foregoing conclusion we agree and the only evidence in the record on this element of loss preponderates in favor of it.

■ We now come to consideration of Miss Smalling's assignments of error and our first conclusion is that neither the original nor amended and supplemental bill contains any allegation of fraud and the only allegation of bad faith set forth in said pleadings is to the effect that the defendants did not act in good faith in refusing to pay complainants' claim.

Neither does the record contain any evidence of fraud or bad faith upon the part of Miss Smalling, upon which fact we have heretofore commented.

The real determinative question involved which affects Miss Smalling in this case is presented to us by a consideration of the basis for an agent's liability to an injured third party where the agent discloses his principal and the action is one which arises out of contract instead of tort.

The general rule governing liability of an agent to a third party in such cases as this is stated in Second Restatement of Agency, Chapter 11, Section 328, as follows:

"An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power to so bind does not thereby become liable for its non-performance."

This same rule is also stated in C.J.S. as follows:

"As agent who contracts on behalf of a disclosed principal and within the scope of his authority, in the absence of an agreement otherwise, or other circumstances showing that he has expressly or impliedly incurred or intended to incur personal responsibility, is not personally liable to the other contracting party, although he may execute the contract in a manner which would otherwise bind him personally, and he need not expressly negative his liability." 3 C.J.S. Agency sec. 215a, pp. 119, 120, 121.

Of course, if the agent has no real or apparent authority to bind the principal the rule is otherwise, but, having found in this case that the agent, Miss Smalling, did have authority to bind the principal, Continental, then there is no basis for holding Miss Smalling liable to complainants.

The general rule and an important exception thereto are also stated in Brown v. Mays (1949), 34 Tenn.App. 632, 241 S.W.2d 871 as follows:

"It is true, as insisted by learned counsel for appellant, that where an agent discloses his principal and contracts so as to bind the principal, the contract will ordinarily be regarded as that of the principal alone. But the contract may bind the agent alone, or the principal alone, or both together, depending on the intention of the parties manifested by the terms of the contract. That is, one as agent may make a contract on behalf of his principal and also on behalf of himself individually, making them both parties and joint principals to the contract. 'It is entirely competent for the agent, although his agency is known and he is fully

authorized to bind his principal, to pledge his own personal responsibility. He may do this in two ways, namely, he may add his responsibility to that of the principal, or he may tender his own responsibility instead of that of his principal. The other party may say to him, 'I know your principal, and I mean to bind him, but I also mean to make such a contract that, if I prefer, I may hold you upon it.' (Mechem on Agency, 2d Ed., Sec. 1419, p. 1048).'' Brown v. Mays, supra, 34 Tenn.App. pp. 636, 637, 241 S.W.2d p. 873.

There is no evidence in this case that Miss Smalling intended to bind herself personally or that the complainants intended for her to be so bound.

While not directly in point with reference to the facts here we think a statement by the Supreme Court of Arkansas in Pennsylvania Millers Mutual Ins. Co. v. Walton (1963), 236 Ark. 336, 365 S.W.2d 859, can be appropriately quoted here. In that case the Arkansas Court said:

'' 'It is a very important consideration that the company was not drawn into a contract of insurance against a risk which it does not insure against. * * *

'If a merchant's clerk should sell goods on credit, which he is employed to sell in that way, and to a person to whom he might properly sell, but for a price less than he was expressly required to obtain, the measure of the merchant's recovery against the clerk in an action for damages would unquestionably not be greater than the difference between the two prices, and that, too, even if the buyer should become insolvent, and not pay anything. If, on the other hand, the clerk should sell property of his employer of a kind which

he was not employed to sell at all, he probably would be held responsible for the whole value. * * *

'Having, then, reached the conclusion that the risk assumed was within the appellant's business, and that it [was] only a question of rates, the appellant should have shown, before it could recover more than nominal damages, that it was damaged in the matter of rates.' '' Supra, 365 S.W.2d pp. 861, 862.

For the reasons hereinabove set forth the assignments of error filed by Continental are respectfully overruled and the assignments of error filed by Miss Smalling are sustained.

■ We find no merit in the complainants' single assignment to the effect that the trial Court erred in finding that complainants were not entitled to recover the statutory penalty as provided for in T.C.A. sec. 56-1105.

It has been held that the burden of proof is on complainant to show that the insurer's refusal to pay was not in good faith. Life & Cas. Ins. Co. v. Robertson (1927), 6 Tenn.App. 43; American National Ins. Co. v. McPhetridge (1945), 28 Tenn.App. 145, 187 S.W.2d 640.

We find here no lack of good faith on the part of Continental, and while disagreeing with its contention, we think there were reasonable grounds for controversy as to the amount of coverage.

Therefore, the complainants' assignment of error is respectfully overuled.

That portion of the trial Court's decree awarding a recovery of $17,810.24 against Miss Smalling is reversed

and set aside. That portion of the trial Court's decree awarding a recovery for the above stated amount in favor of complainants and against Continental is modified by reducing such amount by $368.00, which was the amount found by the trial Court to be due Continental as additional premiums, thus reducing complainants' recovery to $17,442.24, for which amount the trial Court's decree against Continental is affirmed, with interest.

The costs incurred in the trial Court and in this Court will be borne equally by complainants and Continental, that is complainants will pay one-half of such costs and Continental will pay the remaining one-half thereof.

Shriver, P.J. (M.S.), and Todd, J., concur.