# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### June 2000 Session

## TENNESSEE PINE COMPANY v. DAVID AND PATTY VIA

**A Direct Appeal from the Chancery Court for Madison County**
**No. 54937      The Honorable Joe C. Morris, Chancellor**

_____

**No. W1999-00558-COA-R3-CV - Filed August 25, 2000**

_____

A timber company filed a declaratory judgment suit to determine its rights and to declare its contract with a landowner valid and enforceable. The trial court modified the contract and declared the contract as modified valid and enforceable. The landowner has appealed and presents the sole issue for review as whether the trial court erred in not holding the contract unenforceable because of laches.

**Tenn.R.App.P. 3; Appeals as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Charles M. Agee, Jr., Dyersburg, For Appellants, David and Patty Via

Terry Abernathy, Selmer, For Appellee, Tennessee Pine Company

## OPINION

Defendants, David Via and wife Patty Via (herein "the Vias"), appeal the judgment of the trial court declaring the rights, status or other legal relations under a contract made between themselves and plaintiff, Tennessee Pine Company, Inc. (herein "Tennessee Pine").

On July 6, 1998, Tennessee Pine filed a "Complaint seeking Declaratory Judgment" against the Vias. The complaint alleges that the parties entered into a contract on February 26, 1987, whereby Tennessee Pine would plant pine seedlings on approximately 400 acres of land belonging to the Vias. According to the terms of the contract, Tennessee Pine was to execute the paper work and administrative duties necessary to enroll the Vias in a conservation reserve program to receive funding from the United States Department of Agriculture. It was further agreed that upon the expiration of the period that the Vias' land was enrolled in the program, the Vias would assign or lease the land to Tennessee Pine for an additional fifteen year period, with the annual compensation

of approximately $53.00 per acre. The Vias were to pay Tennessee Pine one-half of the cost of planting the pine seedlings, which they would receive from the U.S. Department of Agriculture as part of the subsidy for the cost of planting the pine seedlings.

The complaint avers that certain controversies, disputes and disagreements have arisen between these parties concerning the construction, validity and/or application of the contract, and that a declaratory judgment was needed to resolve such controversies. The complaint further avers that the contract between the parties is valid and enforceable according to its terms and provisions, and that the contract grants and establishes certain proprietary rights belonging to Tennessee Pine. The complaint claims that the Vias now deny the validity of such contract, and have refused to accept and perform the terms, provisions and obligations of said contract. Plaintiff seeks a declaratory judgment with respect to the rights, status, and other legal relations of the parties under the contract. The complaint further seeks that the court declare that the contract is valid, binding and obligatory in all respects and should be enforced according to its terms.

The Vias' answer and counter complaint was filed on August 6, 1998. They admit that a contract was made between the parties, and that a dispute has arisen between the parties. The Vias deny that the contract is a valid and enforceable contract, and aver that Tennessee Pine has never performed to its obligations under the contract. They aver that immediately after the execution of the contract, Tennessee Pine materially breached its obligations under the contract, thereby relieving the Vias of any duties or responsibilities. The Vias aver that Tennessee Pine materially breached its obligation under the contract by failing to plant pine trees on their 400 acres of land. The Vias further allege that they have performed each and every obligation required under the contract, unless they were relieved of that requirement to perform by the material breach of Tennessee Pine. The counter-complaint seeks a declaratory judgment that the contract is void, and for damages.

In the non-jury trial held on April 23, 1999, Mr. Robert Smith, president of Tennessee Pine, testified on its behalf. Smith stated that he had been contacted by David Via sometime in late 1986 or early 1987. Via told Smith that he had been approved to enroll in a ten year conservatory resource program (herein "CRP") for grass, but that he wanted to extend his enrollment to a twenty-five or thirty year period, and convert to the program for the conservation of pine trees. Smith testified that on February 26, 1987, Tennessee Pine Company Inc., entered into a contract with David and Patty Via. Tennessee Pine began planting pine saplings on the Vias' property in March of 1987, and continued planting through April of that year. They discontinued planting on the Via's property because the planting season, as designated by the State, was terminated for 1987. When planting ended, Tennessee Pine had completed only one hundred fifty acres of the four hundred acres contracted to be planted. Smith stated that both parties knew that because they entered the contract in February, they might not get all of the planting done in that planting season, which usually runs from December thru March.

After planting one hundred fifty acres, Smith took steps to get paid, following his regular billing procedure with the Vias. He sent them an invoice dated April 28, 1987, reflecting the full amount for planting approximately one hundred and fifty acres with 700 seedlings totaling

$10,480.60. Smith testified that he provided the Vias with an invoice marked "paid in full" to facilitate payment from the ASCAS office of one-half of the cost for planting. The Vias were to show the invoice to the ASCAS office and would receive reimbursement for one-half of the cost, which they were to pay to Tennessee Pine. Via told him that he had received payment from the government. However, Smith never received payment from the Vias. Consequently, Tennessee Pine did not return the following planting season to plant the remaining acreage. Smith testified that he tried to reach Via by telephone several times, but that Via never responded.

Smith testified that sometime in 1987, Via made it clear to him in a telephone conversation, that he was not willing to pay Tennessee Pine for the planting that they had done, but denies that the conversation was heated, and stated that there was never any discussion of the contract being over. Smith denies that he ever threatened Via with a law suit, and states that he did not tell Via that he would take his farm away. On February 1, 1988, he wrote to Via, again requesting payment.

Smith states that he has more than $10,000.00 invested in the planting and maintenance of the trees. Smith has made at least two trips a year to the site for the past ten years, which involves traveling fifty miles. Smith testified that the Vias' advantages under the contract included no initial costs, the extension the conservation program, and no management expenses over the course of twenty-five to thirty years. On the other hand, Tennessee Pine bears the risk of loss associated with owning the pines, and will get no money out of the contract until the trees are harvested. Smith indicated that the contract would cease when he cut the timber.

Mr. Via testified that he did receive a check from the ASCS office in the amount of $4,500.00, for one-half of what they approved for the planting. Via does not contest the fact that under the contract, he was to give that money to Tennessee Pine, but explained that he did not pay Tennessee Pine because he had doubts about them. Via stated that he owns another piece of land in Carroll County, where Tennessee Pine was supposed to plant pine trees. The Tennessee Pine crew was pulled off that land before the planting season was over, and sent to plant someone else's land. Via states that Tennessee Pine had more work than it could do. As to the telephone conversation with Smith, Via testified that he voiced his displeasure with the way the planting was handled. He complained that no trees were planted on his land in Carroll County, and that only a little over one-third of the trees were planted per the contract at issue. Via testified that Smith then "give me a cussing and told me he didn't want nothing else to do with me." Via claimed that Smith threatened to sue him and sell his farm. Via states that he did not speak to Smith after that heated conversation, and does not remember receiving a letter from him after the telephone conversation, but states that if he had received a letter, he would have ignored it. Via testified that he did receive, but returned a check from Tennessee Pine for $3,000.00 for a bonus payment, which seemed suspicious to him. With regard to damages, Via testified that from 1987 through 1997, he received only $18,462.00, in an annual CRP payment, instead of the $21,400.00 as stated in the contract as a result of Tennessee Pine's planting only one hundred fifty acres of trees. Via claims a loss of $3,000.00 per year due to the unplanted acreage. In 1997, Via renewed his enrollment with the CRP and is currently receiving $40.00 per acre for the planted acreage.

On cross-examination Via admitted to having filed bankruptcy in 1988 (around the same time the Tennessee Pine's counsel sent him the letter which he does not remember receiving). Concerning the 400 acres at issue, Via stated that he enrolled in the CRP grass program as early as March of 1986, before he met Smith. Via stated that he had no contact with Tennessee Pine from about 1988 until the expiration of the CRP program in 1997.

At the close of proof, counsel for Tennessee Pine explained that his client did not make any claim to the $4,500.00 received by the Vias because he did not want to run afoul of bankruptcy proceedings.

The trial court made findings of fact and conclusions of law, which we quote:

> That the Plaintiff, Tennessee Pine Company, Inc., and the Defendants, David Via and wife, Patty Via, freely, knowingly and voluntarily entered into a certain CONTRACT, dated February 26, 1987, (Exhibit No. 1), and the Court finds that the CONTRACT is plain, unambiguous and speaks for itself.
> The Court further finds that, pursuant to the CONTRACT, the Plaintiff planted one hundred fifty (150) acres of pine in the spring months of 1987 and that, in accordance with the required procedure, the Tennessee Department of Conservation, Division of Forestry, checked the planting and found that "the results are excellent." (Trial Exhibit No. 2A).
> The Court further finds that the remainder of the acreage was to be planted during the planting season of the following year (See again Trial Exhibit No. 2A), but because the Defendants refused to pay over to the Plaintiff the funds that the Defendants received from the ASCS Office for the planting of the one hundred fifty (150) acres, the Plaintiff did not plant the remaining acreage the following year, and the Court finds that the Plaintiff's decision not to plant any additional acreage was justified in light of the Defendants' refusal to pay, and the Court further finds that there is no creditable proof in this record that the failure to plant any additional acreage resulted in any cost, expense or damage whatsoever to the Defendants.
> The Court makes no specific findings and declaration of the rights for the Plaintiff concerning the approximate Four Thousand Five Hundred ($4,500.00) Dollars that the Defendants should have paid over to the Plaintiff for the planting of the one hundred fifty (150) acres, because of the Plaintiff's statements in Court concerning the uncertainty of whether or not this debt was discharged by the Defendants' bankruptcy.
> The Court further finds that, according to the CONTRACT between the parties, the involved land was required to "lay out" for

ten (10) yeas, as prescribed by the CRP Program, and that during this ten (10) year period, the Defendants received payments on their land from the ASCS/CRP Program.

The Court further finds that, upon the expiration of the initial ten (10) year term of the CRP Program, the Plaintiff's fifteen (15) year lease on the one hundred fifty (150) acres of growing pine timber would have commenced, and that the Plaintiff would have been required to make the annual payment to the Defendants in the amount of Eight Thousand Five Hundred (8,500.00) Dollars, (150 acres x contract price of $53.70 per acre). However, it is undisputed that upon the expiration of the initial CRP Program, the Defendant elected to extend his land in the program, and it is undisputed that the Defendants have continued to receive a CRP Program payment on this entire farm, containing approximately four hundred (400) acres, which includes the one hundred fifty (150) acres of growing pine timber. The Court further finds that the per acre price now being received by the Defendants is Forty Dollars and 80/100 ($40.80).

THEREFORE, the Court finds and ORDERS that the CONTRACT between these parties is valid and applicable and is reformed to the extent that the Plaintiff's leasehold interest is restricted to the one hundred fifty (150) acres of growing pine timber, and further finds and ORDERS that the Plaintiff's initial fifteen (15) year lease on this one hundred fifty (150) acres will commence immediately upon the expiration/termination of the current CRP Program.

That, as acknowledged and as agreed in open Court, during the extended term of the CRP Program, the Plaintiff shall pay to the Defendants the difference in the per acre CRP payment of Forty Dollars and 80/100 ($40.80), and the Contract price of Fifty Three Dollars and 70/100 ($53.70), on the one hundred fifty (150) acres.

That, so long as the Plaintiff pays to the Defendants the ordered amount on an annual basis, the Plaintiff retains a proprietary and lease hold interest in the one hundred fifty (150) acres of growing pine timber, and has all of the rights and obligations imposed upon it by the involved CONTRACT.

That the Court does hereby, in accordance with Tennessee Code Annotated § 29-14-101, find, declare and ORDER that the parties' rights, status or other legal relations under the involved Contract are as herein specified.

That the Counterclaim filed by the Defendants against the Plaintiff is dismissed, and the parties shall equally share the statutory Court costs.

A Final Decree incorporating the above was entered June 24, 1999. The Vias have appealed, and raise one issue, as stated in the brief:

> 1. Whether the trial court erred in not declaring the contract unenforceable due to the fact that plaintiff took no action for over an eleven (11) year period and was thereby guilty of *laches*.

We will confine our discussion to the one issue presented. *See* Tenn.R.App.P. 13(b).

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn.R.App.P. 13(d).

Unreasonable delay in pursuing rights calls the equitable doctrine of *laches* into play to prevent assertion of stale claims. *Nunley v. Nunley*, 925 S.W.2d 538 (Tenn. Ct. App. 1996). In *Nunley*, the Court said:

> We note, however, that delay by itself is not sufficient to invoke the doctrine of laches. As this court said in the case of *Brister v. Brubaker's Estate,* 336 S.W.2d 326, 332, 47 Tenn. App. 150, 162 (1960), "[T]he determinative test as to laches, which may be available as a successful defense, is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay." See also *Parker v. Bethel Hotel*, 34 S.W. at 217, 96 Tenn. at 285.

*Id.* at 542.

In *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corporation,* 715 S.W.2d 41 (Tenn. 1986), our Supreme Court said:

> As the Court of Appeals noted in *American National Insurance Co. v. McPhetridge*, 28 Tenn. App. 145, 187 S.W.2d 640, *cert. denied* (Tenn. 1945), "[t]he doctrine of laches was very aptly stated . . . in *Evans v. Steele*, 125 Tenn. 483, 494, 495, 145 S.W. 162, 165, as follows:
>
>> 'Relief is generally refused by courts of equity, because of lapse of time, only in such cases where the loss of evidence, death of witnesses or parties, and *failure of memory* resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and make it impossible for the

court to pronounce a decree with confidence . . . The Doctrine of laches . . . is not an arbitrary or technical doctrine. No hard and fast rule for its applicable can be formulated.'"

187 S.W.2d at 643 (emphasis added). The application of the doctrine in the first instance lies within the discretion of the trial court and it will not be reversed except upon a showing of an abuse of discretion. *Hannewald v. Fairfield Communities, Inc.*, 651 S.W.2d 222, 228 (Tenn. Ct. App.), *permission to appeal denied* (Tenn. 1983).

*Id.* at 46.

The record does not indicate that the Vias pled the doctrine of laches in defense of the complaint. However, appellee's counsel has stipulated in its brief that the day before trial, the Vias amended their answer to add the defense of laches. Although we accept the stipulation that there was a pleading of laches, our examination of the record reveals no evidence to support this defense. The applicability of the doctrine of laches is dependent upon the facts of each case and lies within the discretion of the trial court. Absent a showing of abuse, the trial court's decision as to the application of the doctrine of laches will not be reversed on appeal. *Hardeman County Bank v. Stallings,* 917 S.W.2d 695 (Tenn. Ct. App. 1995).

We find no abuse of discretion by the trial court. Accordingly, the decree of the trial court is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellants, David and Patty Via and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.