## 22331. CARTER *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.

DECIDED AUGUST 31, 1932.

*Mitchell & Mitchell, Lamar Camp,* for plaintiff.

*Maddox, Matthews & Owens, Spalding, MacDougald & Sibley, Estes Doremus,* for defendant.

BROYLES, C. J. H. B. Carter brought suit for $250 upon a policy of life-insurance issued to him by the Prudential Insurance Company of America. The petition alleged: that the policy was issued on January 11, 1926, and that the insured had paid all premiums due thereon up to and including October 21, 1929; that on May 24, 1931, he received injuries in an automobile accident that made it necessary for his left arm to be amputated between the elbow and shoulder; that under the terms of his policy (he having paid the premiums thereon for more than three years) he was entitled to one year and forty-nine weeks extended insurance, and therefore the policy was in full force and effect on May 24, 1931; that the defendant company denied liability under the policy and refused to pay the claim more than sixty days prior to the filing of the suit. Upon the trial the suit was dismissed on general demurrer, and the plaintiff excepted.

The provisions of the policy sued upon (a copy of which was attached to the petition) disclosed that it was primarily a straight life policy which included a special disability clause covering loss of eyesight or limbs. That clause provided that the insured should be paid certain amounts for the loss of his eyesight or of any of his limbs, provided that such loss occurred "while this policy is in full force and effect and *while there is no default in the payment of premium.*" (Italics ours.) The premiums were payable weekly, and the petition shows that the last premium paid by the insured was on October 21, 1929, and that he lost his arm on May 24, 1931. Therefore it indisputably appears that on the date of his accident

there existed many defaults in the payment of premiums on the policy. However, counsel for the insured contend that since the petition showed that the insured had paid the premiums on the policy for more than three years, he was entitled, under the non-forfeiture provisions of the policy, to one year and forty-nine weeks extended insurance, which would have carried it beyond the date of the loss of his arm. Let us consider that contention. The non-forfeiture clauses of the policy are as follows: "If this policy lapse for non-payment of premium after premiums have been duly paid for three full years or more, the insured, without any action on his or her part, will become entitled to non-participating extended insurance for the respective term specified in the following table. The amount of insurance payable if *death occur* (italics ours) without said term shall be the same amount as that which would have been payable if this policy had been continued in force, except as to dividend additions subsequent to the date of lapse. Or, in lieu thereof, the insured may surrender the policy within three months after such lapse and will then be entitled at his or her option to receive either a non-participating paid-up *life* policy (italics ours) or payment in cash as specified in the following table. If there be any indebtedness under this policy, such indebtedness will be deducted from the cash surrender value, or the term of the extended insurance or the amount of the paid-up *life* policy (italics ours) will be reduced to such term or amount as the net single premium value of the respective provision reduced by such indebtedness shall provide according to the *mortality* table (italics ours) hereinafter specified. [At this point is set forth a table covering automatic extended insurance, paid-up *life* policies and cash surrender values, up to and including twenty years.] Note. Tables of automatic extended insurance, paid-up life policies, and cash surrender values after twenty years will be furnished on request. The basis of the non-forfeiture values is the net reserve according to the Standard Industrial Mortality Table with three and one half per cent. interest per annum. The figures in the above tables up to the end of the twentieth year include a surrender charge of not more than two and one half per cent. of the amount of insurance. Should the amount of insurance be increased by dividend additions the reserve thereon shall be included with the net reserve on which the non-forfeiture values are based and the total surrender charge shall not

be more than two and one half per cent. of the total amount insured. At the end of twenty years and thereafter no surrender charge is made. In computing values from the foregoing tables, due allowance will be made for each completed quarter of a year's premiums paid over and above the full number of years there indicated."

In our opinion the language used in the foregoing non-forfeiture provisions of the policy is clear and unambiguous and covers death claims only, and has no reference to claims for the loss of eyesight or limbs. This being true, there is no inconsistency between the non-forfeiture provisions of the policy and the other provisions providing payment for loss of eyesight or limbs "while this policy is in full force and effect and while there is no default in the payment of premiums." Certainly, when all of these provisions are properly construed together, there exists no ambiguity as to the question now under consideration.

It follows from what has been said that the trial court properly dismissed the petition on general demurrer.

*Judgment affirmed.   Luke and Hooper, JJ., concur.*