THE MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEWARK, NEW JERSEY, a corporation of the State of New Jersey, Defendant Below, Appellant, v. PHILIP H. BAILEY, Plaintiff Below, Appellee.

(*April* 24, 1963.)

SOUTHERLAND, Chief Justice, WOLCOTT and TERRY, J. J., sitting.

*Thomas Herlihy* and *Herman Cohen* for the appellant.

*Donald W. Booker* and *Alfred J. Lindh* for the appellee.

Supreme Court of the State of Delaware, No. 84, 1962.

TERRY, J.:

In the fall of 1953, plaintiff conferred with an independent insurance agent who solicited life insurance for defendant and other companies to discuss insurance for his young children. Plaintiff testified that his desire was to secure term insurance during the minority of his children which would enable him to pay burial expenses if any of the children died during their early years. The agent in question advised plaintiff that no company sold term insurance for the age group in question but recommended a policy issued by the defendant company. Under the terms of the policy proposed to plaintiff, if the insured died prior to age 10, the beneficiary would receive a return of premiums paid; if the insured died after 10 years of age, the face amount of the policy would be payable. The agent also advised plaintiff that it was possible, by the payment of an additional premium, to secure a rider to this basic policy which would provide for payment of the face amount of the basic policy if death occurred prior to age 10.

Since the basic policy contained a non-forfeiture provision, plaintiff requested information from the agent as to the possible implementation of the non-forfeiture provision in view of his intent to convert the policy to term insurance as soon as possible. The agent testified that, relying upon an interpretation of the policy given to him by the district agent of

the defendant company, he informed plaintiff that if plaintiff exercised his option to default in the payment of premiums, thus bringing the non-forfeiture clause of the policy into operation, the face amount of the policy would be payable if death occurred during the operative period specified in the non-forfeiture clause.

Plaintiff paid annual premiums from November 2, 1953 through November 2, 1957. On November 2, 1958, plaintiff intentionally defaulted in the payment of the annual premium by returning the premium notice to the Wilmington office of the defendant company. Accompanying the premium notice was a letter from plaintiff requesting information on the duration of extended coverage and informing the defendant of his intention to secure extended term insurance by this action. Plaintiff testified that he received no reply to this letter.

In November of 1960, the insured died prior to attaining an insurance age of 10 years. Defendant company tendered plaintiff a sum equal to all premiums paid plus dividends and interest, and plaintiff refused this offer, demanding the face amount of the policy. After defendant's refusal to pay the demanded amount, plaintiff brought suit, alleging two contentions: (a) the terms of the policy in question are ambiguous and should be construed in favor of the insured, thus requiring payment of the face amount, and (b) in the alternative, defendant is estopped to rely upon the provisions of the contract which would normally preclude payment of the face amount. The trial court, sitting without a jury, found for the defendant on the first allegation but rendered judgment for the plaintiff, after agreeing with his second contention. It is from this judgment that defendant prosecutes this appeal.

The rider in question contains the following language, *inter alia*: "Any default in premium Payments hereunder, or under the Policy shall immediately render this Rider null and void * * *. The Non-forfeiture provisions of the Policy

shall not be a part of this Rider, and shall not apply to any insurance hereunder * * *." It is conceded that there had been a default in payment of premiums for at least two years prior to the death of the insured. Accordingly, under the terms of the rider, the rider was null and void at the time of the death of the insured, and the face amount was, therefore, not available for payment to the beneficiary. *Carter v. Prudential Insurance Company of America*, 45 Ga. App. 510, 165 S. E. 329 (1932), and *Aronson v. Suffolk Savings Bank*, 339 Mass. 648, 162 N. E. 2d 44 (1959).

The plaintiff, however, argues that contracts of insurance should be liberally construed in favor of the insured. While this no doubt is an accurate exposition of the law, this rule has no application where the terms of the contract are free from ambiguity. As the court stated in *Miller v. Pennsylvania Mutual Life Insurance Company of Philadelphia*, 189 Wash. 269, 64 P. 2d 1050 (1937): "The rule that the contract will be construed most favorably to the insured will be applied only when there is an unexplained ambiguity in the language of the contract." (At page 1053).

Plaintiff, however, argues that, taken as a whole, the contract is ambiguous because of certain language contained in the non-forfeiture provision of the basic policy. The non-forfeiture provision provides *inter alia*: "The insurance will be AUTOMATICALLY EXTENDED from the date of default for a sum which initially shall equal the amount which would have been payable if the insured had died on such date * * *." It is conceded that on the date of default, the rider provision was operative, and, accordingly, if the insured had died on such date, the face amount would be payable. However, as noted above, the rider specifically states that the non-forfeiture provision is inapplicable to it. In addition, agents of the defendant company testified that the basic policy is often sold without the rider, again indicating no intent to include the rider within the language of the non-forfeiture clause. To

the extent that there is an inconsistency between the rider and the basic clause, the rider provisions will govern. See *Miller v. Penn. Mutual Life Insurance Company of Philadelphia*, cited *supra*.

■ Turning to the second contention presented by this appeal, the trial court specifically found as a fact that "before plaintiff purchased the policy, he asked Mr. Frank B. Francis whether or not the additional coverage created by the Rider would continue in effect as part of the automatic-extended-insurance provisions in the event of default; Francis assured him that it did, and, further that he had secured a similar interpretation through Mr. Raley, defendant's district agent." The findings of fact of a trial court, sitting without a jury, will not be disturbed if reasonably supported by competent evidence. *Turner v. Vineyard*, 7 Terry 138, 80 A. 2d 177 (Supreme Court, 1951).

■■ The burden of proof to prove an estoppel rests upon the plaintiff and the proof offered must be clear and convincing. See *Employers Liability Assurance Corp. v. Madric*, 4 Storey 46, 183 A. 2d 182 (Supreme Court, 1962). An examination of the record indicates that the finding of fact reached by the trial court is supported by competent evidence and meets the test enunciated above. The testimony of defendant's agent indicates that Francis informed plaintiff that the face amount of the policy would continue to be payable after plaintiff had invoked the extended insurance clause of the policy. In addition, Francis testified that he secured a confirmation of this interpretation from the district agent of defendant, who died prior to the institution of these proceedings. Defendant strongly attacks the credibility of this testimony on the ground that it was highly unlikely that the district agent gave this advice and equally unlikely that Francis did not secure a contrary interpretation from the manuals of the defendant company which allegedly were provided to him. The determination of the credibility of witnesses, how-

ever, is certainly within the province of the trial court, and we see no reason to disturb this determination. In addition, plaintiff testified that he informed Francis of his desire to have continuous term insurance upon his children for their minority and that he intended to invoke the extended insurance provision to achieve this end. Plaintiff further testified that Francis informed him that he could secure such term insurance by taking the contemplated action. In addition, as noted above, plaintiff informed the district agent of defendant company of his desire to secure term insurance by taking default action and received no reply to this answer.

■■ Defendant then argues that the finding of the trial court was insufficient to justify the invocation of an estoppel. In the first place, defendant argues that since plaintiff, a college-educated professional man, read the policy, he must be bound by its terms. Plaintiff, however, certainly was entitled to rely upon the advice of defendant's agent, who has been active in the field of insurance since 1938. Secondly, defendant argues that plaintiff is barred from alleging an estoppel in view of the allegation made by plaintiff in paragraph 5 of the complaint. This complaint provides, *inter alia,* that plaintiff was informed by Francis that "if premiums were not paid under the non-forfeiture provisions of the policy, the insurance would be extended in accordance with the table appearing on Page 4 of the said policy. * * *" Defendant argues from this language that plaintiff thereby concedes that the only payments due him are the payments provided by the basic policy. However, considering our modern rules of pleading and the function of pleading to give notice, we are satisfied that this pleading sufficiently states plaintiff's contention that the full amount of the policy would continue to be payable under the non-forfeiture provisions.

■ Thirdly, defendant argues that since the court has found the policy to be unambiguous, the interpretations placed upon the policy by an agent will not bind the company, citing

*E. J. Evans Co. v. Ohio State Life Insurance Company*, 144
So. 2d 833 (Florida District Court of Appeal, 1962). While
it is no doubt true that an insured may not rely upon an in-
terpretation placed upon a policy by an agent which is pat-
ently absurd, an insured may rely upon an interpretation
which is plausible, although legally untenable, provided that
the interpretation be not "in patent conflict" with the terms
of the policy. See *Stivers v. National American Insurance
Company*, 247 F. 2d 921 (9th Cir. 1957). If this were not true,
the rule of estoppel would be meaningless because the quan-
tum of ambiguity which defendant suggests is necessary to
invoke an estoppel would also be sufficient to invoke the rule
of liberal construction in favor of the insured.

The only question here is whether the agent's
interpretation is so plainly in conflict with the forfeiture pro-
vision of the rider that plaintiff cannot be heard to say that
he relied upon it. Such a case was *Employer Liability Assur-
ance Corp. v. Madric, supra.* In the present case, as we have
already noted, the non-forfeiture provisions of the basic policy
extended the insurance, in the event of non-payment of
premium, from the date of default in an amount which would
have been payable if the insured had died on that date. By
reason of the grace period in the rider, it was still in effect on
the date of default. Although the insured's interpretation is
not legally sound, yet one not versed in life insurance might
become confused in construing the two parts of the contract,
particularly since, as the defendant's agent testified, the policy
was "a very unusual one."

Of course, the doctrine of estoppel may not be
invoked to make a new contract, or to change radically the
term of the policy to cover additional subject matter. 3 *Rich-
ards on Insurance*, Sec. 443. But in this case, the insured was
justified in relying on the agent's interpretation.

Defendant's final contention is that Francis was not an
agent who was authorized by the terms of the policy to waive

provisions of the contract. In the first place, Francis did not purport to waive provisions of the policy but rather to interpret them to plaintiff. See *Stivers v. National American Insurance Company*, cited *supra*. In the second place, 18 *Del. C.* § 916 was intended to remove the distinction between soliciting agents, general agents, and officers of the company for the purpose of imputation of knowledge or estoppel. See *Appleman, Insurance Law and Practice*, Section 9104.

The judgment of the court below is affirmed.