CONTAINER CORPORATION OF AMER-ICA, a Delaware corporation, and London Guarantee and Accident Company, Ltd., a London, England, corporation, Plaintiffs,

v.

BITUMINOUS CASUALTY CORPORA-TION, an Illinois corpora-tion, Defendant.

Superior Court of Delaware.

New Castle.

March 28, 1969.

William J. Alsentzer, Jr., Wilson & Lynam, Wilmington, for plaintiffs.

Robert G. Carey, Prickett, Ward, Burt & Sanders, Wilmington, for defendant.

## OPINION

O'HORA, Judge.

This case requires disposition of motions for summary judgments by plaintiffs and of cross motions for summary judgment by defendant. Because of the complexity of the facts, it may be helpful to review them here.

The motions to be disposed of arise out of an accident which occurred on November 13, 1963. On that date John Cannon, an employee of Wilmington Waste and Materials, Inc. ("Wilmington Waste") delivered a load of cardboard bales to Container Corporation of America ("Container"). Cannon backed the truck, a 1951 Brockway, to the dock. Since the bed of the truck trailer was several inches higher than the loading platform, Estridge, an employee of Container, joined the trailer and the platform by a 6′ x 6′ steel plate, to facilitate unloading. Estridge secured the steel plate to the trailer by two steel pins

each 6 to 7 inches long and 1 inch in diameter, which he placed through holes in the steel plate and through holes on the rear of the trailer bed. Estridge then proceeded to unload the cardboard bales, each weighing about 900 pounds, with a fork lift. While Estridge was unloading one of the final bales, one of the steel pins worked loose. The plate tilted, causing the bale on the fork lift to brush Cannon. It is disputed whether at that time Cannon was "standing around" on the loading dock or helping with the unloading. In any case, contact with the 900 pound bale propelled him onto the surface of the parking lot, thereby injuring him.

As a result Cannon's employer's compensation carrier, Bituminous Casualty Corporation ("Bituminous") paid him workmen's compensation for the injury.

Bituminous notified Container on February 25, 1964, of the workmen's compensation payments made to Cannon, and demanded reimbursement under its subrogation rights. Container's liability carrier, London Guarantee and Accident Company, Ltd. ("London") notified Bituminous on March 17, 1964, that it was investigating Bituminous' subrogation claim. On April 15, 1964, London advised Bituminous that on the basis of its investigation, it had concluded that Container was entitled to liability coverage under an automobile liability policy issued to Wilmington Waste by Wilmington Waste's motor vehicle liability carrier. London did not at that time identify who the carrier was but did refuse to accept responsibility for reimbursement to Bituminous.

As a consequence of London's refusal to reimburse Bituminous, the latter requested Cannon to sue Container, pursuant to 19 Del.C. § 2363, to recover for damages resulting from the accident. On November 10, 1965, Cannon filed suit (Cannon v. Container Corp., No. 592 Civil Action 1965) in this Court, which action is still pending.

On December 7, 1965, London informed Bituminous that it (Bituminous) was the liability carrier on the Wilmington Waste's truck, and requested Bituminous to defend Container in No. 592 Civil Action 1965. Bituminous refused, *inter alia*, on the grounds that the liability insurer of the 1951 Brockway truck involved (No. 154WH1144204), was Transamerica Insurance Co. and not Bituminous.

Container subsequently sued for declaratory relief in the United States District Court for Delaware (Container Corp. of America v. Bituminous Casualty Corp., No. 3144 Civil Action 1966). This action was dismissed for lack of diversity of citizenship.

Container thereafter filed the present action for declaratory judgment. London has been added as a party plaintiff. Cannon, the insured party plaintiff in No. 592 Civil Action 1965, has been added as a defendant. Transamerica, which Bituminous says is the insurer of the Brockway truck, is not a party.

Bituminous opposes Container's motion for summary judgment and moves for summary judgment itself on grounds that it did not insure the 1951 Brockway tractor present at the accident scene on November 13, 1963. Bituminous alleges that, in fact, the Brockway was at all times excluded from coverage under the policy with Wilmington Waste.

Container does not deny that the Brockway tractor was involved and that it was excluded from coverage. Container suggests, however, that the trailer present at the accident scene, the identity of which is unknown, was insured by Bituminous and that, in any event, Bituminous is estopped to deny that it insured the vehicles involved.

In support of its motion, Bituminous relies on several affidavits and the insurance policy itself. The affidavit of Theodore Carl Zutz ("Zutz affidavit"), the agent through whom the Bituminous policy was placed, maintains that Bituminous intended to exclude and did exclude from coverage those Wilmington Waste vehicles regularly

operating beyond a 50 mile radius from the location of Wilmington Waste; that among the vehicles so excluded was the 1951 Brockway; that the exclusion continued in effect throughout the life of Wilmington Waste's policy, from October 7, 1958 until April 17, 1967 when Bituminous cancelled the policy; and, more specifically, that the exclusion was in effect from October 7, 1963 to January 3, 1964, which period included the date of the accident.

The affidavit of William A. Tulskie, underwriting manager for Bituminous, is in accord with that of Zutz. Since nothing to the contrary is offered by Container, it must be taken as undisputed that Bituminous did not insure the Brockway on the date of the accident and, in fact, expressly excluded it from coverage at all times.

■ Container suggests that the trailer used with the Brockway on November 13, 1963 was an insured vehicle because Definition Section 3(b) of the policy states that "except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer * * *". Container's argument might have relevance if any trailer were listed among the vehicles insured under the Wilmington Waste policy. However, no trailers were separately or individually insured in the policy's listing of insured vehicles. Even if the policy covered trailers when used in connection with insured vehicles, since the Brockway was not insured, no trailer used with it could be subject to such incidental coverage.

Since nothing to the contrary appears in the record, it must be taken as undisputed that no trailers were separately insured under the Wilmington Waste policy.

■ It is clear then that the Brockway was not insured by Bituminous, nor was any trailer separately insured, nor could any trailer used in connection with the Brockway be incidentally insured, the Brockway itself not being insured. It follows, therefore, that no vehicle present at the accident scene on November 13, 1963 was insured by Bituminous and Bituminous can be liable as an insurer only if it is estopped from asserting the undisputed facts.

The basis for Container's estoppel argument is the failure of Bituminous to allege, prior to December, 1967, that it did not insure the vehicle involved.[1] As a result of Bituminous' silence on the matter, Container instituted suit in Delaware's District Court[2] and instituted this action for declaratory relief in alleged reliance on Bituminous' supposed coverage. The alleged prejudice to Container lies in its having expended money prosecuting two suits based upon insurance coverage which did not exist.

Ordinarily it would be difficult to rule on the question of estoppel as a matter of law. Issues such as whether the party raising the estoppel possessed the means to know the truth[3] or actually relied on the conduct of the other party[4] are particularly subject to factual dispute and the presence of such material factual disputes would preclude the granting of summary judgment. Here, however, those problems are obviated because the entire factual situation does not appear to provide a proper basis for the application of the doctrine of estoppel.[5]

■ As a general rule estoppel cannot be invoked to create an insurance contract

1. The question of whether it was Bituminous' duty to disclose or Container's duty to discover was raised by counsel but need not be decided here.

2. A suit for declaratory relief, dismissed for want of diversity.

3. Wilson v. American Insurance Company, 209 A.2d 902 (Del.1965).

4. Id.

5. The typical case where estoppel against an insurer is proper and typical of the cases cited by Container are those where insurance coverage exists and the insurer is estopped from raising a forfeiture, lapse, suspension, or breach of condition as grounds to avoid liability. Those cases are really not in point.

where none exists and cannot operate to bring within a policy's coverage property, risks, or losses which by the terms of the policy are expressly excepted or otherwise excluded. 16A Appleman Insurance Law and Practice, § 9090 (1968); 18 Couch on Insurance 2d, § 71:35 (1968); 45 C.J.S. Insurance § 674 (1946).

The general rule has found recognition in Delaware in Mutual Benefit Life Insurance Company of Newark, N. J. v. Bailey, 190 A.2d 757 (1963), wherein it was stated:

"Of course, the doctrine of estoppel may not be invoked to make a new contract, or to change radically the term of the policy to cover *additional subject matter* * * *." (Emphasis added).

It is true that an estoppel was applied in the *Bailey* case and also in Clauson v. Prudential Insurance Company of America, 195 F.Supp. 72 (Mass.D.C.1961), a Massachusetts federal decision applying Delaware law. However, in those cases there was no question of whether insurance existed covering particular risks as insurance did, in fact, exist. The issues in those cases were primarily concerned with the amounts payable.

In *Bailey* the question was whether the face amount of the policy was payable or only the total of insured's premium payments in view of certain forfeiture provisions. There was no issue, as here, of whether coverage over the subject matter existed at all.

In *Clauson* plaintiff was entitled to $30,000 worth of insurance, but applied for and received a certificate for $50,000 worth of coverage. The insurer was held estopped from denying that plaintiff was entitled to $50,000. There again the issue was the amount payable and not whether coverage for a particular risk existed at all.

■ The facts in *Bailey* and *Clauson* were inappropriate to invoke the rule rec-

ognized in *Bailey*. To find an estoppel applicable here would amount to the creation of insurance coverage where none existed and "change radically the term of the policy to cover additional subject matter" contrary to both generally accepted principles and the express language of the *Bailey* rule. Container here is seeking by way of estoppel, to set up coverage over property, which coverage would not otherwise exist and is expressly excluded under existing policies. By the weight, authority and good reason estoppel cannot operate to achieve such purpose.

■ Finally, there is a line of decisions cited by Container to the effect that even though estoppel generally cannot create insurance coverage where none exists, the rule is not applicable when an insurance company undertakes a defense and in such circumstances the insurer may be estopped from denying that it extended coverage. Ebert v. Balter, 83 N.J.Super. 545, 200 A.2d 532 (Union County Court, 1964). It should be noted, however, that in *Ebert* the insurance company undertook defense of the underlying personal injury action. Here, Bituminous is defending a declaratory judgment action arising out of a pending action for subrogation. There seems to be no compelling reason why defense of such an action should give rise to the same exception to the general rule that arises when defense of the injury action is undertaken.

Since it is undisputed that no vehicle involved at the accident scene was insured by Bituminous and Bituminous is not estopped from so asserting as a matter of law, defendant is entitled to summary judgment. It is, therefore, unnecessary to rule on the other issues raised by the cross motions.

Container's motion for summary judgment should be denied and Bituminous' motion granted.

It is so ordered.