**BRANDYWINE SHOPPE, INC., a
Delaware corporation, Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY
COMPANY, a corporation of the State
of Illinois, and H. B. Shaffer, Defendants.**

**385 Civil Action, 1972.**

Superior Court of Delaware,
New Castle.

June 11, 1973.

---

Roger P. Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiff.

Morton R. Kimmel, of Kimmel & Spiller, Wilmington, for defendants.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TAYLOR, Judge.

Plaintiff, Brandywine Shoppe, Inc. has brought this action against its insurer,

State Farm Fire & Casualty Co. ['State Farm], and H. B. Shaffer, [Shaffer] an agent of State Farm, to recover the balance allegedly due for a property loss sustained by plaintiff. The plaintiff seeks to recover on the alleged insurance policy or, alternatively, on grounds of negligence and misrepresentation by the defendants. Three issues are before the Court on this motion by defendants for summary judgment: First, whether defendants are liable to plaintiff [1]; second, whether 18 Del.C. § 4102 is constitutionally valid; and, third, whether a statement given by Shaffer to an independent adjuster employed by State Farm is discoverable under the Rules of this Court.

The material facts are as follows: Plaintiff is a small business engaged in retail sales of women's apparel operated by Barbara Snyder. On or about October 8, 1971, Miss Snyder contacted Shaffer to change the named insured and to increase the amount of the coverage on the business merchandise. She indicates that she made it clear that this included all of her coverage on the merchandise. Shaffer admits that he was requested to increase the property limits, but denies that any mention was made of burglary and robbery coverage.

Shaffer had her sign an application form. The form now shows $20,000 "property" coverage [2] and $500 burglary and theft coverage. She states that the latter item was entered after she signed the form. Miss Snyder further alleges that when they had completed their business, Shaffer told her "Don't worry. You now have $20,000 worth of coverage for your merchandise against everything." Shaffer denies these statements.

A copy of the application form was never furnished to plaintiff. A change endorsement showing $20,000 "property" coverage was sent to plaintiff by February, 1972.

On March 2, 1972 the shop was broken into and merchandise valued at more than $17,000 was taken or destroyed. Plaintiff alleges, and Shaffer denies, that when Shaffer visited the store the morning after the loss, he repeatedly assured Miss Snyder that she was completely covered for the stolen merchandise and for loss of earnings. It was not until Robinson, the adjuster, visited the store a week or so later that plaintiff learned that State Farm considered the coverage to be $500.

Preliminarily, it is noted that State Farm admits plaintiff's allegation in its complaint that Shaffer was a "captive agent" of the insurer. In his deposition, Shaffer stated that he was State Farm's general agent with the authority to bind his principal. For purposes of this motion, it will be accepted that the actions of the agent were within the scope of his authority as an agent of State Farm. Canadian Industrial Alcohol Co. v. Nelson, Del. Supr., 8 W.W.Harr. 26, 188 A. 39 (1936).

## ORAL CONTRACT

■ Plaintiff contends that an oral contract or binder existed. It is well recognized that oral contracts of insurance, or binders, are valid and this is so even in jurisdictions which require that insurance contracts be in writing. 1 Couch on Insurance, 573–81, § 14:5; 12 Insurance Law and Practice, Appleman, 254, § 7191; Anno., 14 A.L.R.3d 568, 582 (1967). The words allegedly spoken by Shaffer to the effect that plaintiff was "covered" up to $20,000 for everything, if accepted as true by the trier of fact, could reasonably be found to be either an oral binder (see Anno., 14 A.L.R.3d 568, 585–6 (1967) or promise to issue the increased coverage.

■■ Defendants contend that admitting the oral statements of Shaffer would violate the parol evidence rule. The parol evidence rule is a rule of substantive law

---

1. No separate contention is made by defendants as to the agent, Shaffer.

2. The term "property" coverage apparently excludes loss from burglary or theft.

and not a rule of evidence, which excludes evidence of an antecedent or contemporaneous oral understanding to vary or contradict the terms of a written contract. Carey v. Shellburne, Inc., Del.Supr., 224 A.2d 400 (1966); Arthur Jordan Piano Co. v. Lewis, Del.Super., 4 W.W.Harr. 423, 154 A. 467 (1930). The agreement relied on by plaintiff was allegedly made subsequent to the original policy. Evidence of a subsequent oral agreement modifying an earlier contract is not precluded by the parol evidence rule. 3 Jones on Evidence (6th Ed.) 101–4, § 16:10.

■ ■ The change endorsement sent to plaintiff after the request to increase the coverage limits made reference only to "property" damage. No reference was made to burglary and robbery coverage. Since there exists a factual issue whether Shaffer made any promise respecting burglary and robbery coverage and, if he did, whether it was an oral binder or a promise to procure coverage, summary judgment cannot be granted. Jones v. Julian, Del. Supr., 195 A.2d 388 (1963). Moreover, since under the present evidence it appears that the change endorsement does not refer to burglary coverage, it cannot be said that the alleged oral contract increasing burglary coverage was merged into the written change endorsement.

### ESTOPPEL

Plaintiff next contends that it is entitled to recover on the insurance contract because the defendants are estopped or have waived their right to assert the $500 coverage limit provided in the policy for burglary and robbery.

■ ■ As a general rule, the doctrines of estoppel and waiver may not be invoked to make a new contract, or to change radically the terms of the policy to cover additional subject matter. Mutual Benefit L. Ins. Co. of Newark, N. J. v. Bailey, Del. Supr., 190 A.2d 757 (1963); Employer's Liability Assurance Corp. v. Madric, Del. Supr., 4 Storey 593, 183 A.2d 182 (1963).

To establish estoppel, it must appear that the party claiming the estoppel lacked knowledge of and the means of learning the true facts, that he relied upon the conduct of the party against whom the estoppel is claimed, and that he suffered a prejudicial change in his position as a consequence of such reliance. Wilson v. American Ins. Co., Del.Supr., 209 A.2d 902 (1965).

In *Bailey*, the Delaware Supreme Court found that the representations of an independent insurance agent concerning the effect of certain terms of the insurance policy created an estoppel which prevented the insurer from standing on the terms of the policy. The Court held that unless the agent's representation was "in patent conflict" with the terms of the policy, was patently absurd, or was so plainly in conflict with a clear provision of the policy that an insured could not be heard to say that he relied on it, such representation might be the basis of estoppel.

■ The principle derived from the cases is that a representation made on behalf of an insurer on a subject which is not so clearly covered by language of the policy that there can be no rational disagreement as to the effect and which is within the scope of the policy documents, such as where an ambiguity or uncertainty reasonably exists concerning the meaning or effect of a provision of a policy or an apparent conflict exists between terms of the policy, may estop the insurer to assert a position contrary to the representation. Estoppel has also been applied to prevent an insurer from asserting a defense or objection which might otherwise be available under a policy. Minnick v. State Farm Mutual Auto Ins. Co., Del.Supr., 4 Storey 125, 174 A.2d 706 (1961).

■ In the instant case, if the alleged statements of the agent be accepted as a representation, as distinguished from an oral contract, to the effect that plaintiff had $20,000 burglary coverage, such representation standing in the face of the provi-

sion of the existing policy which showed $500 coverage could not withstand the "patent conflict" test announced in *Bailey,* since it was plainly in conflict with a clear provision of the policy. No case has been cited in which estoppel resulted in greater coverage than that which plainly and un-· equivocally was shown in the policy.

In Clauson v. Prudential Ins. Co. of America, D.Mass., 195 F.Supp. 72, affd. 1 Cir., 296 F.2d 76 (1961), relied upon by plaintiff in support of the proposition that estoppel can result in greater recovery than the policy provided, involved a conflict between two documents issued by the insurer, one of which stated a fixed amount of coverage and the other provided that coverage would be computed according to a formula. The insurer was merely estopped to repudiate the coverage specifically stated in one of the documents.

In view of the holding that estoppel does not entitle plaintiff to robbery coverage above $500, it is not necessary to consider the question of whether plaintiff's reliance upon the alleged representation meets the requirement that one must have been "permissibly ignorant" of the subject matter. Bigelow on Estoppel (6th Ed) 681; Employer's Liability Assurance Corp. v. Madric, supra; 43 Am.Jur.2d 1037, Insurance § 1116; see also Mutual Benefit L. Ins. Co. of Newark, N. J. v. Bailey, supra.

Accordingly summary judgment is granted with respect to the Second Cause of Action.

## CONSTITUTIONALITY OF 18 DEL.C. § 4102

■ Defendants attack the validity of 18 Del.C. § 4102 as violative of the equal protection and due process clauses of the United States and Delaware Constitutions. In support of this contention defendants cite the recent case of Gaster v. Coldiron, Del.Supr., 297 A.2d 384 (1972). In that case the Delaware Supreme Court held that a statute (10 Del.C. § 3912) which

permitted successful contractors, subcontractors and material suppliers in mechanic's lien suits to recover attorney's fees while not providing for recovery of attorney's fees by successful defendants in such suits is unconstitutional. The Court in *Gaster* relied in part upon Missouri K. & T. R. Co. v. Cade, 233 U.S. 642, 34 S.Ct. 678, 58 L.Ed. 1135 (1914) where it was held that a statute similar to the one before the Court, if the classification were not otherwise unreasonable, was a valid exercise of the police power designed to promote prompt payment of small claims and to discourage unnecessary litigation of such claims.

In *Gaster*, the Court recognized that a statute which discriminates for or against a certain class of litigants is unconstitutional "unless it is based upon a legally-cognizable distinction or reason." The Court then analyzed the statute to determine "whether there is a proper reason or basis for requiring a losing defendant . . . to pay a fee for his opponent's attorney when no such burden is placed upon a losing plaintiff." There the Court found no valid public policy ground for favoring a class consisting of contractors, subcontractors and materials suppliers.

■ The relationship between insurers and the public has been the subject of strict regulation. 19 Insurance Law and Practice, Appleman, 1, § 10321. The field of insurance is one which has been subject of special regulation not applicable to business in general. Its operations affect a wide segment of the population. Special controls are vested in an elected official in this State. Art. 3, § 21 Delaware Constitution, Del.C.Ann.; 18 Del.C. Ch. 3. In 1968 a new Insurance Code of 420 pages in length was adopted. 56 Del.Laws Chapter 380. It is recognized that singular statutory treatment of the relationship between the insurance industry and the public is constitutionally acceptable. 19 Insurance Law and Practice, Appleman, 14, § 10343.

The specific subject of allowance of attorney's fees against a losing insurer has been covered by legislation in many states. 6A Insurance Law and Practice, Appleman, 27–40, § 4031. Such provisions have been upheld as not being in violation of the due process and equal protection clauses of the 14th Amendment of the Federal Constitution. Farmers & Merchants' Ins. Co. v. Dobney, 189 U.S. 301, 23 S.Ct. 565, 47 L.Ed. 821 (1903).

While it is true, as contended by defendants, that controls exist in the Insurance Commissioner, it cannot be said that the provision which gives direct protective benefit to an insured is an unreasonable protection. Moreover, as recently as 1968, legislative judgment determined that this protection should be incorporated in the laws regulating the insurance industry. The Court holds that this protection of the public against possible dilatory action by an insurer satisfies the test announced in *Gaster* and that 18 Del.Code § 4102 does not violate constitutional principles.

## PRODUCTION OF STATEMENT OF AGENT

■ Approximately four days following the break-in of plaintiff's shop, the adjuster, Robinson, an employee of Standard Adjustment Bureau, took a statement from Shaffer pertaining to the latter's recollection of his transactions with plaintiff. The statement was transmitted to State Farm as part of the adjuster's report of plaintiff's claim.

Plaintiff seeks production of a copy of Shaffer's statement under Superior Court Civil Rules 26 and 34, Del.C.Ann.; defendants have declined to produce the document, insisting that it is privileged matter prepared in anticipation of trial. Plaintiff has referred the Court to the recent case of *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, N.D.Ill., 54 F.R.D. 367, (1972) wherein that Court concluded that "*any* report or statement made by or to a party's agent (other than to an attorney

acting in the role of counsellor), which has not been requested ['by nor prepared] by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new [Federal] Rule 26(b)(3) and (b)(4)." The authorities cited by defendants were decided prior to the amendment of Rule 26 in 1970.

The statement sought is merely narration of the transaction between plaintiff and defendant's agent, Shaffer. It was made four days after the loss, while the facts were fresh in the agent's mind and while defendant was seeking to learn what had transpired, and presumably before defendant had crystallized a position with respect to the loss. There is nothing to indicate that the nature or scope of the statement was guided in any way by an attorney or by one who was charged with preparing litigation.

■ Preparation for cross examination is a legitimate objective of discovery. The fact that the agent's deposition was taken three months later does not deprecate from the need for the statement for cross examination purposes, particularly when the deposition relected a sharp discrepancy between the agent's narrations of what happened and the testimony of others present. The deposition taken three months later is not necessarily the "substantial equivalent" of the statement given four days after the final event. If the statement sought is covered by Rule 26(b)(3), the facts of this case qualify thereunder. 4 Moore's Federal Practice 26–427, § 26.64[3].

A further comment—if the statement is harmonious with the deposition, defendants have not been harmed by the production. If, on the other hand, the statement contradicts the deposition, the production will have served the ends of justice and should have been produced. By the production,

defendant will not have been put to additional expense or inconvenience.

Defendants are directed to produce the statement.

To summarize: Defendants' motion for summary judgment is granted as to the Second Cause of Action and denied in all other respects. Defendants' motion to quash plaintiff's subpoena duces tecum as to the statement taken from Shaffer by Robinson is denied and defendants are directed to produce the statement.

It is so ordered.