**DALLAS GLASS OF HENDERSON-VILLE, INC. and Trans-Units, Inc., Petitioners-Plaintiffs,**

v.

**BITUMINOUS FIRE & MARINE INSURANCE COMPANY, Respondent-Defendant.**

Supreme Court of Tennessee.

Oct. 11, 1976.

Rehearing Denied Nov. 15, 1976.

F. Dulin Kelley, Hendersonville, for petitioners-plaintiffs.

Ed R. Davies, Nashville, for respondent-defendant.

OPINION

HARBISON, Justice.

This case involves a question of coverage under the provisions of a cargo insurance policy issued to the petitioners by respondent.

Petitioner Trans-Units, Inc. manufactures aluminum and glass prefabricated motel fronts. Petitioner Dallas Glass of Hendersonville, Inc. supplies trailers used to transport the cargoes shipped by Trans-Units, Inc. Petitioners purchased cargo insurance from respondent insurance company through an insurance agency in Hendersonville, Tennessee, known as Newman, Hayes and Hogin, Inc.

Among other policies of insurance purchased through this agency, petitioners were issued a multi-peril insurance policy from respondent. By endorsement, this policy provided:

"This policy covers on lawful goods and merchandise consisting of . . . the property of the Insured or sold by them and in course of delivery . . . *within a radius of 500 miles of Hendersonville, Tennessee.*" (Emphasis supplied).

While the policy was in effect, a tractor-trailer unit, transporting cargo consigned to a Holiday Inn in Bangor, Maine, was involved in an accident at the site of an overpass in the vicinity of Wells, Maine, some twelve hundred miles from Hendersonville. Respondent denied liability under the policy, contending that there was contact only between the cargo and the structure of the overpass, with no part of the tractor-trailer unit being involved. This presented a question of coverage, since the policy indemnified for loss "caused by collision of the vehicle". In addition, respondent relied upon the mileage limitation contained in the endorsement quoted above.

The trial court allowed recovery for the cargo loss, in the amount of $9,900.00. The Court of Appeals reversed and dismissed the suit. That court pretermitted the question of whether there was a loss caused by "collision" within the meaning of the policy. It held that the mileage limitation "is a part of the insuring portion of the insurance policy," and that the coverage of the policy could not be changed through application of principles of waiver or estoppel.

Petitioners have insisted throughout the litigation that they desired to purchase complete coverage on their cargoes while in transit and that the mileage limitation had never been called to their attention. The insured had for a period of some four years made monthly reports to the insurance carrier, through the agency, showing the destination and value of each cargo shipped. Over ninety percent of the shipments exceeded the five hundred mile policy limitation. Representatives of the insured testified that full cargo coverage had been requested, and that in order to obtain it the insured went on a "monthly reporting" basis, with respect to its cargo coverage. Under this procedure, the insured paid an initial estimated premium, but submitted monthly reports concerning its shipments, these reports usually being filled out by a member of the insurance agency itself. The insured was subject to annual audit and adjustment of its premium. A representative of the petitioners testified as follows:

"Q. What do you mean by liability exposure and cargo coverage?

"A. Cargo coverage on a reporting basis is based on your exposure by amount of dollars, by amount of miles you travel.

. . . . . .

"Q. Is that your understanding?

"A. Yes, sir, that was my understanding, because our exposure was much greater from here to New York than it would be from here to Nashville.

"THE COURT: On liability?

"THE WITNESS: On liability, and the exposure of the cargo insurance. This is why it went to a reporting type basis.

"Q. Is this the reason an audit was made every year?

"A. Yes, sir.

"Q. Did you pay additional premium or did you receive reduced premiums?

"A. We received additional premiums or received credit, depending on the exposure for that period of time."

Two representatives of the insurance agency were called as witnesses by the insurer. They testified that they had full knowledge of the fact that the insured's shipments were exceeding the five hundred mile limitation. Both of them testified, under examination by counsel for the insurance carrier, that they did not agree with the respondent's reliance on the policy limitation in this case. They based their conclusions, in part at least, upon the monthly reporting system which had been instituted, showing the value and destination of each cargo which was insured.

The representatives of the insurance agency testified that they felt that the insurance carrier had full knowledge of the operations of the insured from these monthly reports and also from inspections made of the insured's premises and vehicles by engineering personnel of the insurance carrier. One of them testified that the company required monthly reports in order that it might set the premiums. In addition, he stated that this information enabled the company to determine whether "they don't want the coverage any more . . . ."

There is no testimony indicating that any representative of the insurance carrier had called to the attention of the insured the mileage limitation over the period of years during which monthly reports had been filed. An underwriter from the Nashville office of the insurance carrier testified that the company only charged the insured premiums based upon the five hundred mile limitation. She testified that the company did write coverage for distances up to fifteen hundred miles, but at substantially increased rates.

The Court of Appeals held that while principles of waiver or estoppel might be invoked by an insured to prevent an insurance carrier from relying upon exclusionary provisions of an insurance policy, those principles were not available to prevent reliance by the carrier upon the actual insuring clauses of the insurance contract. The Court cited and relied principally upon the cases of *E. K. Hardison Seed Co. v. Continental Cas. Co.,* 56 Tenn.App. 644, 410 S.W.2d 729 (1966), and *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's Inc.,* 493 F.2d 257 (6th Cir. 1974).

■ It is indeed a recognized principle of insurance law that a contract of insurance cannot be created by waiver or estoppel. However, this general statement, although well supported by case law, should be considered in light of the facts to which it has been applied.

In the case of *E. K. Hardison Seed Co. v. Continental Cas. Co.,* 56 Tenn.App. 644, 410 S.W.2d 729 (1966), the insured had a policy of insurance against liability for damages "caused by accident". The insured was sued for breach of warranty based upon a claim of defective merchandise. There was testimony that the insurance agent had told the insured that it had "full coverage" for its business operations, but all parties agreed that there had never been any discussion between the insured and the agent with respect to contractual coverage, or any kind of liability insurance other than that arising from accident. The Court of Appeals affirmed the Chancellor in declining to reform the contract to afford such coverage, because the subject had never been discussed by the parties. Also upon these facts the court held that warranty coverage could not be created or supplied by waiver or estoppel.

■ The principle that a new contract, or coverage of a different kind of risk, cannot be created by waiver or estoppel has reference to the nature of the coverage afforded, not merely to limitations or conditions pertaining to a risk already covered by the policy. In the course of its opinion in the *Hardison Seed Co.* case, *supra,* the Court quoted with approval of the following statement from 45 C.J.S. *Insurance,* § 674:

"As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change

the terms of the policy so as to cover additional subject matter."

It was this same principle which was applied by the Court of Appeals for the Sixth Circuit in the case of *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.,* 493 F.2d 257 (6th Cir. 1974). In that case the insured had a policy covering liability for bodily injuries to persons. It sought, by estoppel, to create coverage for slander, false arrest and similar intentional torts.

This is not the situation in the present case. Here the insured clearly had cargo collision coverage. The record shows that the insured and the agent of the insurer intended that the insured would be furnished full coverage upon its cargoes while in transit. The policy which was issued and delivered contained a five hundred mile limitation upon coverage, but, for a period literally of years prior to the incident in question, the insured reported monthly to the insurer both the values of its cargoes and the destination of each shipment. These shipments were to points in many different states of the United States, and nearly all of them were to destinations well beyond the five hundred mile radius. There is no question but that the agent knew of these shipments, and, for that matter, no question but that the insurance company also knew of them. It received the monthly reports and made annual premium adjustments. Its safety engineers inspected the vehicles upon which the cargoes were transported. It seems implausible that the company could consider that the insured intended to procure coverage upon its cargoes within a five hundred mile radius, but that it expected to be self-insured beyond that point. The testimony of both the insured and the agents is clear that the insured desired full coverage upon its cargoes, and that it changed to a monthly reporting system, with an annual premium audit and adjustment, upon the advice and recommendation of the insurance agents.

■ Under these circumstances, we do not conceive that any new contract of insurance is being "created" by application of principles of waiver or estoppel. Indeed, the case seems to us to turn upon the principle of waiver, which has long been defined in the Tennessee cases as the voluntary relinquishment of a known right.[1] There is no question but that the agents considered the cargoes covered beyond the five hundred mile radius and that the insured expected such coverage. The agency conferred regularly with the insured and continually attempted to furnish insurance coverage suited to the needs of a changing and expanding business operation.

■ Had the insured brought this action for reformation of the policy, by a suit in equity, rather than as an action at law upon the contract, a chancery court in all probability would have reformed the policy to conform to the clear intentions of the parties, permitting coverage up to fifteen hundred miles (the maximum written by the insurance carrier) and requiring the insured to pay an additional premium accordingly.

Since reformation of the policy was not sought below, it would be inappropriate for us to decree that relief here. In our opinion, however, there was a waiver of the limitation upon coverage by the insurer, both through the actions of its agents and through the knowledge which it itself received and acted upon. Under these circumstances, we hold that the insured is entitled to recover the amount of its loss, insofar as the mileage limitation is concerned.

Support can be found for the judgment of the trial court in the case of *Miller v. Monticello Ins. Co.,* 50 Tenn.App. 363, 361 S.W.2d 496 (1961). In that case certain welding equipment was insured while located on premises described in the policy. The equipment was used at different locations from the insured premises, with the knowledge of the agent, and was destroyed several miles therefrom. The Court of Appeals affirmed a recovery against the insurance carrier upon principles of waiver.

To the same effect is the case of *Shelby Mutual Ins. Co. v. Wilson,* 53 Tenn.App. 428,

---

1. *Baird v. Fidelity-Phenix Fire Ins. Co.,* 178 Tenn. 653, 162 S.W.2d 384 (1942).

383 S.W.2d 791 (1964). In that case the insured had a homeowner's policy, covering unscheduled personal property to its full value while on the premises described in the policy. The policy also covered unscheduled personal property while away from the premises, subject, however, to a limitation of ten percent of the "on premises" coverage.

In that case the insured moved from Greeneville, Tennessee to Rogersville, Tennessee in September, 1962, and, in December, 1962 the insured again moved from within the corporate limits of Rogersville to another location just outside the city limits. These changes in location were known to the insurance agent. The personal property of the insured was destroyed by fire while at the last location. The Court of Appeals affirmed a judgment against the insurance carrier for the full value of the property, finding evidence to support the judgment of the trial court that the agent had knowledge of the location of the property, that this knowledge was imputed to the insurance carrier, and that there was a waiver of the limitation on the location of the property.

Reference also should be made to the case of *Smith v. Continental Ins. Co.*, 63 Tenn. App. 48, 469 S.W.2d 138 (1971), where the insurer was held liable for the full loss claimed despite incomplete data reported by the insured and the agent on monthly forms as to inventory values. The agent was held to be the insurer's agent under T.C.A. § 56–705, and it was bound by her actions and agreements.

We do not find that these cases conflict with the *Hardison Seed Co.* case and other cases holding that insurance coverage cannot be created by waiver or estoppel. If the insured in the present case had cargo insurance limited to some particular peril, it is doubtful that the insurance could be changed through principles of waiver or estoppel to protect against some entirely different risk. We do not have in this case, however, a question of a change in the nature of the coverage, but simply a condition or limitation upon a risk which was actually underwritten, and such conditions and limitations are subject to waiver by authorized representatives of an insurance carrier.

In the case of *Bailey v. Life & Casualty Ins. Co. of Tenn.*, 35 Tenn.App. 574, 250 S.W.2d 99 (1951), it was said:

"Any contractual provision in a policy of insurance, made for the benefit of the insurer, not mandatory under a statute, may be waived by an officer or agent of insurer who has actual or apparent authority so to do. Furthermore, the insurer by express words or by acts or by a course of conduct may ratify the acts of its unauthorized agents relating to such provisions, or be estopped to rely upon them. . . ." 35 Tenn.App. at 582–583, 250 S.W.2d at 102.

As previously indicated, the insurance carrier did contend in the trial court that there was no coverage in the present case because of the facts surrounding the accident and the policy terms as to "collision". This contention has been properly preserved for appellate review. It was upon this basis that the company initially and primarily denied payment of the loss. The mileage limitation was merely an additional reason for the denial. The opinion letter of trial counsel to the company, on the basis of which liability for the statutory penalty was denied, did not even refer to the mileage provision.

We reverse the decision of the Court of Appeals that the mileage limitation precludes recovery under the circumstances shown in this case. The cause is remanded to that court for consideration of the assignments of error made by the insurance carrier which were pretermitted, as to whether there was in fact coverage for this particular occurrence.

Costs in this Court are taxed to respondent. All other costs will be assessed by the Court of Appeals upon its disposition of the case.

COOPER, C. J., and BROCK, J., concur.

HENRY and FONES, JJ., dissent.

HENRY, Justice (dissenting).

We confront an unfortunate collision between considerations of conscience and controlling concepts of law. The majority reconciles the conflict by a strained construction of the consistent holdings of our courts, leaving a clear rule of law on the one hand, and this case on the other. This decision will be productive of chaos, confusion and litigation. If this, or any other established rule of court-made law is unjust, it should be discarded forthrightly and a more just rule substituted.

## I.

A threshold matter, ignored by the majority, might be addressed.

The pleadings in this case will not support a judgment. The complaint simply alleges that Bituminous issued a specific policy (made an exhibit to the complaint), insuring plaintiffs against all risk of loss. It was upon this contract, and this contract alone, that plaintiffs sought to recover. And this contract restricted coverage to "a radius of 500 miles of Hendersonville, Tennessee".

Plaintiffs did not plead estoppel or waiver and did not seek to reform the policy. The defendant, by answer, affirmatively pleaded the 500 mile coverage provision. Thus, the basic issue tendered by the pleadings, was whether plaintiffs sustained a loss within a radius of 500 miles of Hendersonville. They did not. Under no known principle of pleading and practice, may the issue of estoppel arise to permit a recovery in this action.

Inherent in the majority's opinion is a holding that the coverage provided in a liability insurance policy may be extended by estoppel. We disagree.

## II.

It is a familiar principle of our law that estoppel may be relied upon to protect a right, but never to create one. It could be said that it is a shield, not a sword. It may not be invoked to broaden the coverage of an insurance policy. To permit its invocation, in such a case, would be to create a new contract for which no additional premium is paid. *Inland Mut. Ins. Co. v. Hightower*, 274 Ala. 52, 145 So.2d 422 (1962). It must be borne in mind that there is a distinction between the coverage afforded by an insurance contract and an exclusionary provision. An estoppel may be relied upon to protect an insured against the enforcement of an exclusion in the contract under a proper factual setting; however, it is the prevailing view—followed in the overwhelming majority of the jurisdictions of this country—that the use of the doctrine will not be sanctioned to broaden the policy coverage or to provide protection against risks not specified in the policy.[1] The majority opinion is in the very teeth of this overwhelming view of the law.

In 16A Appleman, Insurance Law and Practice, Sec. 9090, 341–42 (1968), the general rule is stated thusly:

It has been repeatedly held that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. . . . [U]nder no conditions can the coverage or restrictions on coverage be *extended* by waiver or estoppel. (Emphasis supplied).

The immediate question for our consideration is whether the policy provision in the instant case constitutes coverage or an exclusion. In our view it is clearly coverage since it limits and defines the circumstances under which coverage will attach. Of course, in a very broad sense, it can be stated that every circumstance or condition not specifically included in the contract automatically operates to exclude every other circumstance or condition and, therefore, the fact that the policy limits coverage to 500 miles would automatically operate as an exclusion of all coverage beyond 500 miles. While this is true, broadly speaking, it is not correct within the meaning of the law

---

1. See annotation, 1 ALR 3d 1139 (1965).

of estoppel as applied to insurance contracts.

In *D'Angelo v. Cornell Paperboard Products Co.,* 59 Wis.2d 46, 207 N.W.2d 846 (1973), the Court points out that *an exclusion* serves the purpose of taking out persons or events otherwise included in the defined scope of insurance coverage, and *coverage* refers to the sum of the risk against which the policy provides protection.

We have examined the decisional law of this jurisdiction in the light of these general principles and, upon examination, find that our cases, when properly construed, have generally followed the prevailing view.

A significant case, often cited by the courts of other states and in treatises, is *Henry v. Southern Fire & Cas. Co.,* 46 Tenn. App. 335, 330 S.W.2d 18 (1958). The insureds, who were engaged in the logging business, sustained a loss and incurred substantial liability when a trailer became disengaged from the truck by which it was being pulled and crashed into an oncoming vehicle, killing one person, injuring others and causing considerable property damages. The company denied liability on the grounds that the trailer was not described in the policy. The trailer was not listed in the policy and it contained a specific exclusion of "any trailer owned or hired by the insured and not covered by like insurance in the Company". The insurance agent was familiar with the insureds' business activity, and gave them full assurances that they had complete liability coverage on their usual logging operation. The Court of Appeals, in a most excellent opinion by Judge Carney, reversed and remanded the case for a new trial, holding that if the insureds could convince the jury that the agent "assured them of full liability coverage, they are entitled to recover" under the policy, and "the company will be estopped to rely upon the terms of the *Exclusion clause* as a defense." 330 S.W.2d at 32. After reciting the claimed conduct of the agent the Court made this observation:

> The result was the same to the complainants. They were lulled into a false sense of security. They were misled to their prejudice.
>
> *Ibid.* at 30.

But it will be remembered that the Court of Appeals, in that case, was dealing with an *exclusion* and not *coverage.*

The strongest Tennessee case we find in support of the insureds' position in this lawsuit is *Miller v. Monticello Ins. Co.,* 50 Tenn.App. 363, 361 S.W.2d 496 (1961). The insureds in that case were the owners and operators of a machine shop. Among other items of equipment, they owned a mobile welding machine that was insured against loss under a policy which restricted coverage to loss sustained on equipment while located or contained in certain described premises in Bruceton. The unit was destroyed by a fire at a point some seventeen miles away. The company denied liability on the basis that there was no coverage because, at the time of its destruction, it was not located at the place described in the policy. The agent of the company knew that this particular piece of equipment was used away from the place of business and the proof showed that he assured the policyholder that "his equipment was covered at all times and places and never called his attention to the fact that his equipment was not insured when away from his regular place of business." 361 S.W.2d at 498.

The Court, again speaking through Judge Carney, held:

> Under these circumstances we think a jury might well find that the defendant's agent, Mr. Brower, and therefore the company itself, waived the restriction or limitation of coverage and also lulled Mr. and Mrs. Miller into a sense of false security by leaving them under the impression that they were fully covered under the terms of the policy which was issued. If such facts are true the company is estopped to rely upon this restriction or a limitation of coverage in the policy as a defense.
>
> *Ibid.* at 499.

This case clearly addresses a matter of coverage as opposed to an exclusion, and is analogous to the factual situation in the

case at bar; however, it is not in accord with the general rule and is out of harmony with the later opinion of the Court of Appeals for the Middle Section in *E. K. Hardison Seed Co. v. Continental Cas. Co.,* 56 Tenn.App. 644, 410 S.W.2d 729 (1966).

In the *Hardison Seed Company* case, the policy obligated the company to pay as "damages because of injury to or destruction of property, . . . caused by accident." The insured was sued for breach of warranty based upon failure of certain seed to germinate. Hardison called upon Continental Casualty to defend under a comprehensive general liability insurance policy. It declined, contending that loss or damage because of breach of warranty, was not within the coverage of the contract.

The Court, speaking through Judge Humphreys, later a Justice on this Court stated:

[I]n keeping with the doctrine many times enunciated and never departed from that estoppel is available to protect a right, but never to create one (citing cases) we have no case in Tennessee in which the doctrine of estoppel was made the basis of recovery except where the loss was within the coverage provided by the insuring clauses of the contract. (citing cases).

So, in order for there to be a recovery on the basis of an estoppel, a paramount condition must be met, the acts of the agent relied on for the estoppel and the estoppel arising on account of these acts must result in a liability which would be within the insuring clauses of the contract.

410 S.W.2d at 733.

The majority opinion passes over this significant language and all but ignores this case.

Along with *E. K. Hardison Seed Company,* the Court of Appeals, in the instant case, relied upon *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.,* 493 F.2d 257 (6th Cir. 1974), where the Court spoke through an excellent opinion by the late Judge William E. Miller.

Judge Miller treats *E. K. Hardison Seed Company* as "an important clarification of *Henry*", and observes:

When the *Hardison* and *Henry* decisions are read together it is clear that under Tennessee law a showing that an insurance agent told the insured that his policy contained full liability coverage is sufficient to estop the insurance company from relying on an *exclusion* in the policy to deny coverage. Similarly, if the agent mistakenly or negligently wrote a policy for the insured which the agent either knew or should have known did not provide the coverage that the insured wanted and needed, then the insurance company may not assert the *exclusionary* clauses. (Citing cases) But we have been unable to find any case in which a Tennessee court has used the doctrines of estoppel or negligence to write into an insurance policy *coverage that was not specified in the contract.* Instead, the cases are limited to the situation in which an insurance company is *estopped to assert an exclusionary clause,* thereby permitting the insured to rely on the coverage provisions in the policy. (Emphasis supplied).

493 F.2d at 260.

The majority opinion attempts to dilute the holding in this case and quotes no part of this language.

In *Insurance Co. of No. Am. v. Federated Mut. Ins. Co.,* 518 F.2d 101 (6th Cir. 1975), the Court correctly summarizes our law as follows:

The Tennessee rule . . . appears to be that the determination whether an *exclusion* clause will be given effect depends, not only on the language of the provision, but also on whether, if the clause is given effect, the insurer, in light of its knowledge of the policyholder's business, would fail to provide the coverage that might reasonably be expected. (Emphasis supplied).

518 F.2d at 105–06.

This case is not even alluded to in the majority opinion.

We now examine a few of the authorities from other jurisdictions.

In *Albert v. Home Fire & Marine Ins. Co. of California*, 275 Wis. 280, 81 N.W.2d 549, 553 (1957), the Court held that "the local agent's oral misinterpretation of unambiguous provisions as to coverage can not work a modification of the contract by estoppel or otherwise."

In *Reeves v. New York Life Ins. Co.*, 421 S.W.2d 686, 688 (Tex.Civ.App.1967), the court held that "[a] contract cannot be created by estoppel, (citing cases) and estoppel and waiver cannot bring within the coverage of a policy a loss which is expressly excluded therefrom."

In *Imperial Cas. & Indem. Co. v. Carolina Cas. Ins. Co.*, 402 F.2d 41, 45 (8th Cir. 1968), the court recognizes that estoppel may not be "invoked to create a liability for benefits not contracted for at all," and "that while there may be a waiver in matters of forfeiture the courts are unwilling to utilize estoppel to create a new contract."

In *Looney v. Allstate Insurance Company*, 392 F.2d 401, 408 (8th Cir. 1968), the court, speaking through Judge Blackmun, now Associate Justice on the United States Supreme Court, applying Arkansas law, held that "waiver and estoppel usually cannot operate to extend coverage where none exists under the contract."

In *State Automobile Insurance Ass'n v. Kooiman*, 143 F.Supp. 614 (D.S.D.1956), the court, applying South Dakota and Minnesota law, held that where the policy afforded coverage to loss or damage within a 50 mile radius, waiver or estoppel because of knowledge of the insurance agent, of use beyond that limit could not be utilized to provide extended coverage. In this regard, the Court said:

> In the instant case the coverage is sought to be extended by the insured to include liability beyond the 50 mile radius without payment of additional premium. This risk was not included or contemplated by the terms of the policy, and the coverage may not be extended on the basis of waiver or estoppel because of knowledge by the agent of use beyond the express terms of the policy.

143 F.Supp. at 618.

To the same effect is *Container Corp. of America v. Bituminous Cas. Corp.*, 252 A.2d 117 (Del.1969).

### III.

The reasoning of the majority opinion is highly persuasive, but the fact remains that it is out of harmony with the overwhelming majority view and with the decisions heretofore announced by the courts of Tennessee.

While the dictates of fairness and justice might indicate a departure from the established rule that estoppel may not be relied upon to expand the coverage provided by an insurance contract, this doctrine is too indelibly impressed into our law to justify making an exception which would, in effect, destroy the rule of law. Rules relating to contractual obligations should not be tampered with absent most compelling considerations. The stability of the law must be a continuing objective. While we are somewhat less than enthusiastic about the practices and procedures followed by Bituminous in this case—and particularly with its failure to discuss either with its agent or with its insured, the operation as revealed by the monthly reports—we cannot depart from what we consider to be an established rule of law in order to correct an apparent injustice.

We, therefore, would hold that the doctrines of waiver and estoppel may not be invoked, as a general rule, to broaden or increase the coverage of an insurance contract; but that they may be invoked in cases involving forfeitures, limitations or exclusions.

We would affirm the judgment of the Court of Appeals.

In complete candor, I concede that the majority reached a just conclusion under the peculiar facts and circumstances of this case. This was a hard case and "hard cases make bad law". I would be willing to change the rule of law so as to provide that

coverage may be extended by estoppel, under proper pleadings, and pursuant to clear, cogent and convincing proof, but cannot be a party to circumventing the law as, I submit, the majority does in this case.

Mr. Justice Fones joins in this dissent, except to the extent of the preceding paragraph. It is his view that the law not only is settled, but settled correctly.