991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WEST AMERICAN INSURANCE COMPANY, Plaintiff-Appellee,
v.
John POTTS, et al., Defendants-Appellants.
 No. 92-5592.
 United States Court of Appeals, Sixth Circuit.
 April 13, 1993.
 
 Before KEITH and SILER, Circuit Judges, and WOODS, District Judge.*
 PER CURIAM:
 
 
 1
 Defendants John[1] and Karen Potts (the "Potts" collectively) appeal from the district court's January 17, 1992 judgment which declared that plaintiff, West American, was not liable for the tort judgment held by the Potts. For the reasons stated herein, we AFFIRM IN PART AND VACATE IN PART.
 
 I.
 
 2
 Defendants/appellants, the Potts, were involved in an automobile collision with the driver of a tractor-trailer truck in Little Rock, Arkansas, on November 27, 1985. The truck was actually three trucks decked together, and when the brakes malfunctioned, one member of the Potts family was killed and the rest were injured. The truck was purchased from Ferrell and Joe Benjamin in Memphis, Tennessee.
 
 
 3
 Ferrell and Joe Benjamin were father and son, doing business as Fleet Service. Ferrell retired from the business in July, 1985, and sold the business to his son Joe, but Ferrell continued to work on the premises. Fleet Service was in the business of selling, leasing, and repairing trucks.
 
 
 4
 On November 26, 1985, Ferrell sold the three trucks involved in the accident to Murillo Inturralde. Ferrell instructed Joe's employees to "deck" the trucks so that Inturralde could drive them back to Mexico. The wheels on the front axles of the vehicles being towed were removed and were connected to the frame of the lead vehicle with a metal strap which wrapped around the frame across the air hose which operated the brakes to the front vehicle, cutting that hose and causing an audible leak. Ferrell did not inspect the trucks before he let them leave the premises.
 
 
 5
 In a prior federal court action brought in Little Rock, Arkansas, the Potts sued Inturralde (a citizen of Mexico who did not appear at trial, and whose whereabouts are unknown), and the Benjamins, individually and as Fleet Service.[2] Jurisdiction in that case was based on diversity. The Potts alleged that the Benjamins were negligent in decking the three trucks. The jury returned a verdict for the Potts, awarding $1,165,000 in compensatory damages and $400,000 in punitive damages against the Benjamins.
 
 
 6
 On July 22, 1988, West American, Ferrell Benjamin's insurer, filed a complaint in the Tennessee Circuit Court seeking a declaratory judgment that the Arkansas judgment against Ferrell Benjamin was not included in the coverage of the insurance policy issued by West American. On July 26, 1988, the case was removed to federal court.[3] The Potts and West American filed cross motions for summary judgment, and on July 20, 1989, the district court granted summary judgment in favor of West American. The Potts appealed the decision, and the Sixth Circuit remanded on the basis that the court's grant of summary judgment was erroneous because genuine issues of material fact remained.[4] The Sixth Circuit was convinced by the Potts' argument that Sam Watson's testimony was inconclusive regarding Ferrell Benjamin's intentions when he purchased the insurance policy. The Sixth Circuit was also concerned that the policy's "completed operations hazard" exclusion may have been inapplicable to the situation, and found that the language used was ambiguous.
 
 
 7
 At the remand trial, the court found that for the years 1980 through 1983, Ferrell Benjamin purchased a $1,000,000 umbrella liability policy from Sam Watson, for Fleet Service. In 1983, Ferrell left Watson, and purchased a similar umbrella policy from another agency in order to get a better price. In 1984, Ferrell returned to Watson to purchase his insurance. Watson quoted Ferrell a price for a $1,000,000 umbrella policy, but Ferrell decided it was too expensive, and purchased a different policy which is identified as Trial Exhibit 1. Trial Exhibit 1 is a General Fire Policy, and was issued to Ferrell Benjamin d/b/a Fleet Service for the year August 1984 through August 1985.
 
 
 8
 When Ferrell's 1984-1985 insurance policy lapsed, a Special Multi-Peril Policy was issued to him individually (not d/b/a Fleet Service) for the year beginning August 29, 1985. This policy was the one in effect when the Arkansas collision occurred. The trial court specifically found that the Special Multi-Peril Policy was a lessor's fire policy on the premises owned by Ferrell, with $1,000,000 in liability for bodily injury and property damage as the owner of the property, and not as an owner of the business located on the premises. The court found that Ferrell sold Fleet Service to his son Joe in June or July of 1985. It was because of the sale to Joe that the Special Multi-Peril Policy was issued in August 1985 to Ferrell in his individual capacity, and that the policy was for property owner's liability only.
 
 
 9
 On January 17, 1992, the trial court determined that the Arkansas judgment received by the Potts against Ferrell Benjamin was not covered by the insurance policy issued by West American. Because the court found that the policy was for lessor's liability, and did not cover off-site accidents involving trucks that had been sold by Ferrell, the ambiguous exclusion clause discussed by the Sixth Circuit was no longer an issue in the case. If the policy did not apply, then necessarily the exclusion would not apply. This appeal followed.
 
 
 10
 The Potts present four issues in this appeal: 1) whether the trial court erred in its construction of the West American insurance policy issued to Ferrell Benjamin; 2) whether the trial court erred in holding that Watson was the agent of Ferrell Benjamin, rather than West American; 3) whether the trial court erred in denying the Potts' request for certain facts to be admitted; and 4) whether the trial court erred in entering a monetary judgment against the Potts.
 
 II.
 
 11
 This case came before the district court under its diversity jurisdiction, so the substantive law of the state of Tennessee applies. Appellants seek to have the insurance contract construed against the insurer, and consistent with the insured's alleged expectations. In light of the fact that an umbrella policy was not issued to Ferrell Benjamin, appellants are essentially seeking a reformation of the insurance policy to comport with Ferrell's intentions when he purchased the policy. A court in equity may order reformation of an insurance contract in the same circumstances as any other contract, that is, when it is necessary in order to comport with the express mutual intent of both parties. Gothard v. Murphy Oil Corp., 659 S.W.2d 26 (Tenn.App.1983). In the absence of fraud or mutual mistake, the contract must be interpreted and enforced as written. E.O. Bailey & Co. v. Union Planters Title Guaranty Co., 232 S.W.2d 309 (Tenn.App.1949).
 
 
 12
 There is a three part test to determine when reformation of an insurance contract is appropriate on the basis of mutual mistake. The burden is on the proponent of reformation to show by clear and convincing evidence that: (1) there was an antecedent agreement entered into by the consent of both parties; (2) there is an error in the policy which fails to reflect the mutual intent of the parties; and (3) the error is a result of a mutual mistake of both parties as to the same fact or facts. Stone v. Old General Insurance Co., No. 44, slip. op. (Tenn.App., January 29, 1987); Dallas Glass of Hendersonville, Inc. v. Bituminous Fire & Marine Ins. Co., 544 S.W.2d 351 (Tenn.1976).
 
 
 13
 Regarding the existence of an antecedent agreement, appellants' evidence purported to demonstrate that Ferrell relied on Watson to issue him an appropriate policy, that Watson was aware of Ferrell's desire to be covered for unforeseeable incidents, and that Ferrell was the owner of Fleet Service in August of 1984. Watson's knowledge can be inferred from the relationship and prior dealings between the two parties. Watson explained at trial that he quoted Ferrell a price for $1,000,000 umbrella coverage in August, 1984, but Ferrell decided against purchasing it because the price was too high. Appellants point out that when Watson was asked the same question at two prior depositions, he answered that he did not know why Ferrell decided against the umbrella policy. Ferrell himself testified that he never told Watson that he did not want the umbrella coverage because it was too expensive. (Dist.Ct. proceedings of October 7, 1991, p. 133) (Jt.App. at 398).
 
 
 14
 The district court heard this evidence, and found Watson to be a credible witness. The first conclusion of law made by the court was that "Ferrell Benjamin did not express any intention to purchase liability insurance that would cover the judgment entered against him in Arkansas...." (Memorandum Decision, January 17, 1992, p. 7) (Jt.App. at 42). The court found that the Multi-Peril Policy issued in August of 1985 reflected Ferrell Benjamin's ownership of the real property in an individual capacity, having sold the business to Joe Benjamin. In the same year, Sam Watson sold a Garage Policy with Liberty Mutual Insurance Company to Joe Benjamin d/b/a Fleet Service. It is evident that Sam Watson knew about the sale of the business by Ferrell to Joe, and that he made the appropriate changes in coverage. Where there is no clear and convincing evidence of an antecedent agreement, the analysis for finding mutual mistake must end. The district court did not abuse its discretion in finding that there was no mutual mistake of the parties as to the existence of umbrella liability coverage.
 
 
 15
 If there is no mutual mistake basis for reforming the insurance contract, the court may still order reformation in the case of fraud. If only the insured has made a mistake as to the coverage of the policy, but there has been fraud or inequitable conduct on the part of the insurer, then the instrument may be reformed to conform to the agreement intended by the insured. Bush v. Jefferson Standard Life Insurance Co., 1991 Tenn.App. LEXIS 509 (Tenn.App., June 28, 1991) (citation omitted). The insured has the burden of proving fraud or inequitable conduct by clear and convincing evidence. Appellants, however, have not made an argument for fraud in either this appeal or their previous appeal to this Court.
 
 
 16
 The court found that Ferrell Benjamin's intention was not as he claimed, and therefore, no extrinsic evidence would be admitted to construe the policy. The court determined that the policy at issue did not cover the Arkansas judgment, therefore there was no need to rule upon the applicability of the completed operations exclusion, which this Court previously deemed to be ambiguous. The district court was correct in their conclusion.
 
 III.
 
 17
 The district court found that Ferrell Benjamin appointed Sam Watson as his agent for purposes of acquiring insurance from West American. (Memorandum Decision, January 17, 1992, p. 5) (Jt.App. at 40). Appellants argue that under the law of Tennessee, an insurance agent is always the agent of the insurer, not the insured. Tennessee Code Annotated Section 56-6-147 states:
 
 
 18
 Every insurance agent or limited insurance representative who solicits or negotiates an application for insurance of any kind, in a controversy arising from the application for insurance or policy issued in connection therewith between the insured or his beneficiary and the insurer, be regarded as the agent of the insurer and not the insurer's beneficiary. This provision shall not affect the apparent authority of an agent.
 
 
 19
 At the trial, the court questioned Ferrell extensively about his relationship with Watson:
 
 
 20
 Court: "Did you consider Sam your agent or the company's agent?"
 
 
 21
 Ferrell: "My agent."
 
 
 22
 Court: "If he didn't buy you a policy that covered what we're talking about now, that was your fault or his fault?"
 
 
 23
 Ferrell: "That was his fault because I left it up to Sam."
 
 
 24
 Court: "But it wasn't the insurance company's fault?"
 
 
 25
 Ferrell: "I don't know whose fault."
 
 
 26
 (Dist.Ct. proceeding of October 7, 1991, p. 97) (Jt.App. at 362). All that the foregoing discussion establishes is that Ferrell Benjamin relied on Sam Watson to sell him the appropriate coverage.
 
 
 27
 As a general rule, insurance agents are the agents of the insurer, just as real estate agents are agents of the seller. In Tennessee this is the law, with an exception carved out for agents who have the apparent authority of the insured. Ferrell Benjamin described Sam Watson as "his agent" for purposes of fulfilling his insurance needs. In order for an agent to have apparent authority, the conduct of the principal must cause a third person to believe that the agent is acting under the consent of the principal. The only third person in this situation is West American, and they consider Watson to be their agent, not the apparent agent of Ferrell Benjamin.
 
 
 28
 Even though the trial court was wrong in finding Watson to be Ferrell Benjamin's agent, such error does not affect the outcome of the case.
 
 IV.
 
 29
 Appellants served West American with requests for admission of certain facts on October 29, 1990. The answers were due in thirty days, pursuant to Federal Rule of Civil Procedure 36(a), but West American did not answer the requests until December 15, 1990. Appellants claim that not only were the answers untimely, they were also inadequate.
 
 
 30
 According to appellants, West American's response to the request for admissions was that they were unable to conduct a reasonable inquiry of the parties having knowledge because those parties were adversarial parties represented by counsel. The docket sheet of the district court reveals that the Potts defendants filed a motion to deem facts admitted on January 14, 1991. West American filed their own motion to deem response to request for admissions timely filed. The Magistrate Judge held a hearing on these motions on February 1, 1991, and entered an order deeming the response was timely filed, therefore the matters were not deemed admitted. On February 11, 1991, the Potts filed a renewed motion to deem certain responses to the request for admissions as admitted. It does not appear that this renewed motion was ever decided by the court.
 
 
 31
 The matter could be remanded to the district court for decision on the renewed motion. There are 13 matters involved in the request for admissions:
 
 
 32
 (1) Admit that Ferrell never received a copy of the multi-peril policy.
 
 
 33
 (2) Admit that Ferrell never read the multi-peril policy.
 
 
 34
 (3-13) Admit matters relating to negligence in decking the trucks.
 
 
 35
 The admission of these matters would not affect the district court's decision, so the failure to decide the renewed motion is harmless error. None of the admissions requested relate to the intent of Ferrell Benjamin, the knowledge of Sam Watson, mutual mistake, fraud, interpretation of the policy, or anything else at issue in the case. First, it is fundamental that the insured is deemed to have read his insurance policy. Even if Ferrell never received a copy of his policy, he knew he had one, he relied on Watson to choose the appropriate coverage, and he easily could have obtained a copy. As for the negligent decking of the trucks, that matter was decided by the Arkansas trial court, and has nothing to do with whether West American is liable to pay the judgment received by the Potts.
 
 V.
 
 36
 At the conclusion of the trial court's memorandum decision it ordered that the clerk enter judgment in favor of West American against the Potts in the amount of $1,565,000 plus interest from the date of the Arkansas judgment. The purpose of a declaratory judgment action is to receive from the court a declaration of the rights of the parties. The district court entered a declaratory judgment that West American was not liable for the Arkansas tort judgment, and this holding was correct and should be affirmed. The second part of the court's holding, which imposes a monetary judgment against the Potts, is error and should be vacated.
 
 VI. CONCLUSION
 
 37
 The decision of the district court in the declaratory judgment action should be AFFIRMED in part and VACATED in part. The judgment declaring that appellee is not liable for the Arkansas tort judgment is AFFIRMED. The judgment against appellants in the amount of $1,565,000 plus interest is VACATED.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 John Potts appeals this action individually; as administrator of the estate of Brandon Potts, his deceased son; and as father and natural guardian of Jeffrey Potts and Kimberly Potts
 
 
 [2]
 Potts v. Inturralde, No. LR-C-85-843 (E.D.Ark. May 5, 1988), aff'd sub nom. Potts v. Benjamin, 882 F.2d 1320 (8th Cir.1989)
 
 
 [3]
 West American Insurance Co. v. John Potts et al., No. 88-2553-4 (Dist.Ct.Western Dist. of Tennessee, July 26, 1988)
 
 
 [4]
 West American Insurance Co. v. John Potts, et al., No. 89-6091 (6th Cir.1990) (Keith, Norris and Duggan)